# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 2 3 2014



CHIEF JUSTICE

This opinion was filed for record
at 8:00 Am on Oct. 23, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 88234-7 |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| MARIO HUMPHRIES, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed OCT 2 3 2014 |

C. JOHNSON, J.—This case concerns whether an attorney can stipulate to an element of a charged crime over his client's express objection and whether, in this case, any error was waived by the defendant. In addition, we must decide whether defense counsel's failure to request a limiting instruction constituted ineffective assistance of counsel. The Court of Appeals, in a two to one opinion, affirmed the defendant's convictions for assault in the second degree with a firearm enhancement and first degree unlawful possession of a firearm. We reverse the Court of Appeals as to the unlawful possession of a firearm conviction and affirm as to the assault conviction.[1]

---

[1] It is unclear whether and in what context Humphries is challenging his second degree assault conviction. The Court of Appeals stated that Humphries did not challenge the assault

FACTS AND PROCEDURAL HISTORY

In the early morning hours of February 7, 2010, Officer David Ellithorpe was patrolling the streets of Seattle in a marked police cruiser. At 1:00 a.m., Ellithorpe saw two men emerge from an alley. One of the men raised his hand and pointed at the officer; Ellithorpe heard a gunshot and saw a muzzle flash in the man's hand. Less than two minutes later, after Ellithorpe had radioed in the incident, another officer apprehended two men. Ellithorpe immediately recognized both men, one of whom was the petitioner, Mario Humphries. The officers arrested Humphries and searched the area but failed to recover a gun or any shell casings.

The State charged Humphries with second and third degree assault, as well as first degree unlawful possession of a firearm based on multiple juvenile convictions for robbery that rendered him ineligible to possess a firearm. On the first day of trial, the parties informed the court that they had agreed to stipulate that Humphries had been convicted of a "serious offense." Defense counsel indicated he did not want the jury to hear about the underlying convictions but informed the court that Humphries disagreed with the stipulation. Both the defense attorney and the trial judge discussed the matter and agreed that stipulating to an element was a

---

conviction, but it appears that he is challenging it in the context of his ineffective assistance of counsel claim. *State v. Humphries*, 170 Wn. App. 777, 796, 285 P.3d 917 (2012), *review granted*, 177 Wn.2d 1007, 300 P.3d 416 (2013).

tactical decision that did not require the defendant's consent.[2] Accordingly, just before the State rested, the stipulation was read to the jury. The stipulation conceded that Humphries "had previously been convicted of a serious offense," that he "had previously received written notice that he was ineligible to possess a firearm," and that he "knew that he could not possess a firearm." Clerk's Papers at 12. The stipulation had been signed by the defense attorney and prosecutor but not by Humphries. No limiting instruction was given or requested to accompany the stipulation. After both sides had presented their cases and before the jury began deliberations, defense counsel indicated that Humphries would sign the stipulation, which he did. The stipulation was filed with the court, but is unclear whether the stipulation was also admitted into evidence.

The jury found Humphries guilty of all three crimes and a firearm enhancement. At sentencing, Humphries's attorney moved for a new trial based on ineffective assistance of counsel, stating that he "should have asked the Court to enter into a limiting instruction," but the trial court denied the motion. Verbatim

---

[2] Specifically, the following exchange occurred between the court and defense counsel:
"[DEFENSE COUNSEL]: I had a long discussion with Mr. Humphries trying to explain the defense strategy, not wanting that to come in.
"He unfortunately doesn't see that. However, I don't think I need his consent when it comes to defense strategy for him to be in agreement with me (inaudible) stipulation so —
"[THE COURT]: That's correct. So you are agreeing to the stipulation?
"[DEFENSE COUNSEL]: Yes, your Honor."
Tr. of Proceedings (Oct. 12, 2010) at 5–6.

Report of Proceedings (Jan. 6, 2011) at 3. The court vacated the third degree assault conviction and imposed 106 months of confinement: 70 months for second degree assault with an additional 36 months for a firearm enhancement and 75 months for unlawful possession of a firearm (to run concurrently).

On appeal, Humphries argued that his constitutional rights were violated when the stipulation was read to the jury over his express objection and that he received ineffective assistance of counsel. The Court of Appeals issued a split decision affirming the convictions. The majority opinion did not address the validity of the stipulation but rather held that Humphries had either waived or abandoned the issue in eventually signing the stipulation. *State v. Humphries*, 170 Wn. App. 777, 798, 285 P.3d 917 (2012). The dissenting opinion argued that entry of the stipulation over Humphries's express objection violated the Fifth and Sixth Amendments to the United States Constitution. *Humphries*, 170 Wn. App. at 801- 02 (Dwyer, J., dissenting). Humphries sought, and we granted, discretionary review. *State v. Humphries*, 177 Wn.2d 1007, 300 P.3d 416 (2013).

ANALYSIS

> a. *Propriety of a Stipulation over the Defendant's Objection*

Humphries argues that the decision to enter a stipulation at trial is exclusively within the defendant's discretion. Accordingly, Humphries argues that before a stipulation can be entered, a court must engage in a colloquy with the

4

defendant to ensure that the defendant is entering the stipulation knowingly and voluntarily. The State argues that whether to enter a stipulation is a strategic decision to be made by counsel and that the defendant's express objection is irrelevant. This is an issue of first impression in Washington. We hold that although the decision to stipulate an element of the crime does not generally require a colloquy on the record with the defendant, such a decision may not be made over the defendant's known and express objection.

The decision to stipulate to an element implicates more than merely trial tactics. Under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, a criminal defendant has the right to require the State prove every element constituting the crime. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *see also Mathews v. United States*, 485 U.S. 58, 64-65, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988). This right is anchored in principles of due process existing under the Fifth and Fourteenth Amendments.[3] When the parties stipulate to the facts that establish an element of the charged crime, the jury need not find the existence of that element, and the stipulation

---

[3] Some cases "anchor" their decisions on the Sixth Amendment right to jury trial. We prefer to characterize the right as a due process right emanating from the Fifth and Fourteenth Amendments. Other cases identify the constitutional right as emanating from confrontation rights under the Sixth Amendment, which, in those cases, may be accurate. *See United States v. Williams*, 632 F.3d 129, 132 (4th Cir. 2011). That analysis is also consistent with principles of due process existing elsewhere.

therefore constitutes a waiver of the "right to a jury trial on that element," *United States v. Mason*, 85 F.3d 471, 472 (10th Cir. 1996), as well as the right to require the State prove that element beyond a reasonable doubt, *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993).

Although stipulations implicate the defendant's constitutional rights, generally stipulations do not need to be accompanied by a colloquy on the record between the defendant and the trial court. In *United States v. Ferreboeuf*, 632 F.2d 832 (9th Cir. 1980), the Ninth Circuit addressed this issue. There, the defendant's attorney signed a stipulation to two elements of a charged crime. On appeal, the defendant argued that stipulations such as this required a trial court to personally question the defendant to determine voluntariness, as is required for the entry of guilty pleas. The court rejected this rule, recognizing a difference between pleading guilty, which requires such a colloquy, and stipulating to crucial facts. As the court reasoned, requiring trial courts to question defendants personally as to the voluntariness of every stipulation would "needlessly delay and confuse the conduct of a typical trial." *Ferreboeuf*, 632 F.2d at 836. Instead, the court held that when a stipulation is agreed to by the defendant's attorney in the presence of the defendant, the trial court may presume that the defendant consents, *unless the defendant objects at the time the stipulation is made. Ferreboeuf*, 632 F.2d at 836.

We agree with this analysis, and here we are dealing with a situation where Humphries did object.

Although courts can presume a defendant consents to a stipulation, this presumption disappears where the defendant expressly objects. In *United States v. Williams*, 632 F.3d 129 (4th Cir. 2011), for example, the defendant was charged with conspiracy to possess heroin with the intent to distribute for receiving a package of heroin in the mail. The prosecution sought to enter a stipulation under which the defendant admitted that the contents of the package tested positive for heroin in lieu of having the forensic chemist testify. *Williams*, 632 F.3d at 131. The defendant refused to sign the stipulation, but the court allowed the defense counsel to sign it over the defendant's objection, and the stipulation was read to the jury. *Williams*, 632 F.3d at 131. On appeal, the Fourth Circuit held that the trial court erred in admitting the stipulation over the defendant's objection because doing so violated his Sixth Amendment right to confront witnesses. *Williams*, 632 F.3d at 132. The court also noted that the "stipulation may also be grounds for a violation of the defendant's right to a jury [trial]." *Williams*, 632 F.3d at 133 n.2. The result recognized that trial courts cannot compel a defendant to enter stipulations to elements of a crime where an objection is made.

Here, in pleading not guilty, Humphries invoked his due process right to require that the State meet its burden of proof as to every element of the crime, a

7

proposition that the State does not contest. Humphries was charged with unlawful possession of a firearm, which makes it a crime for a person to possess or control a firearm "after having previously been convicted . . . of any serious offense." RCW 9.41.040(1)(a). The stipulation established the fact of Humphries's prior serious offense, thereby conceding an element of the crime. Counsel's stipulation relieved the State of its burden of proof as to that element. Had Humphries not voiced an objection, the trial court would have been correct in assuming that he consented to the stipulation. Because Humphries objected, however, the trial court could not accept the stipulation and compel Humphries to waive his constitutional rights.

The State cites several foreign cases for the proposition that counsel has the authority to stipulate to material facts as a matter of trial tactics. Suppl. Br. of Resp't at 9-10 (July 16, 2013) (quoting *United States v. Thornton*, 327 F.3d 268, 270 (3d Cir. 2003); *Poole v. United States*, 832 F.2d 561 (11th Cir. 1987); *United States v. Schoenhut*, 576 F.2d 1010, 1019 n.9 (3d Cir. 1978)). In none of these cases, however, did the defendant expressly object to the stipulation. In line with *Ferreboeuf*, absent an objection by the defendant, the court may presume that the defendant consents to the waiver.[4] The State also relies on *Old Chief v. United*

---

[4] The State also relies on a line of cases that allow an attorney, during closing argument, to concede guilt on certain counts in order to avoid a guilty verdict on more serious charges. Suppl. Br. of Resp't at 10-18 (July 16, 2013). The State reasons that if an attorney can concede guilt to an entire crime during closing argument, he or she should also be able to stipulate to an

*States,* 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997), to support its argument that the trial court's acceptance of the stipulation did not violate Humphries's rights. *Old Chief,* however, holds only that a trial court abuses its discretion when it fails to accept a stipulation to a prior conviction upon defense counsel's *request. Old Chief,* 519 U.S. at 174. It does not hold that a court must accept the stipulation over the defendant's *objection,* as is the issue in this case. *Old Chief* is therefore inapplicable to the present case.

Instead of examining the validity of the stipulation, the Court of Appeals held that Humphries's subsequent decision to sign the stipulation waived his objection or, alternatively, abandoned his challenge to the stipulation on appeal. The Court of Appeals' reasoning is not sustainable.

Waiver of a constitutional right must be knowing, voluntary, and intelligent. *State v. Thomas,* 128 Wn.2d 553, 558, 910 P.2d 475 (1996). Here, the trial court and counsel erroneously told Humphries that his consent to the stipulation was not

---

element of a charged crime. None of these cases, however, involved a situation where the attorney conceded guilt during closing argument over the express objection of the defendant, and they provide no support for the idea that an attorney can. Moreover, even if this were not the case, an attorney's concession during closing argument does not waive any of the defendant's relevant constitutional rights. The State is still required to bear its burden, present admissible evidence, and convince a jury of every element of the crime beyond a reasonable doubt. Similarly, *In re Personal Restraint of Stenson,* 142 Wn.2d 710, 16 P.3d 1 (2001)—which concerned the penalty phase of a capital case—is inapplicable, as the State in that case had already proved the defendant's guilt beyond a reasonable doubt and the defendant had already been convicted.

required. The stipulation was then read to the jury as part of the State's case. It was not until the State rested and the defense had presented its case that Humphries signed the stipulation. At that point, the damage was done, and nothing suggests that Humphries's signature was anything other than forced acquiescence to what had already occurred. Without something in the record suggesting that he voluntarily changed his mind, the signature cannot be considered a knowing, intelligent, and voluntary waiver of his constitutional rights.

As the dissent in the Court of Appeals opinion here recognized, even though the waiver of a constitutional right may be informed by strategic considerations, it cannot be involuntary. *See Humphries*, 170 Wn. App. at 804 n.12 (Dwyer, J., dissenting). Entering the stipulation as to an element of the crime over Humphries's known objection would have constituted an involuntary waiver of his due process right to hold the State to its burden of proof. The trial court erred when it allowed the stipulation to be read to the jury over Humphries's known objection, and the record does not indicate that his subsequent signature on the stipulation constituted an informed and voluntary waiver of his rights once they had been asserted.[5]

---

[5] We emphasize that we are not holding that a defendant must enter a knowing, intelligent, and voluntary waiver for a stipulation to be valid, as the dissent argues. Dissent in part at 5. Nothing in this opinion alters the general procedure for entering a stipulation when the defendant is silent and his consent validly presumed. Under the facts of this case, however, the

As an alternative ground to affirm, the Court of Appeals held that even if the trial court erred in accepting the stipulation over Humphries's objection, such an error was harmless. A constitutional error is harmless when there is no reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. *State v. Frost*, 160 Wn.2d 765, 782, 161 P.3d 361 (2007). The Court of Appeals reasoned that even absent the stipulation, the State was fully prepared to and would have presented evidence of Humphries's prior serious offense convictions for robbery. *Humphries*, 170 Wn. App. at 796. But as Judge Dwyer correctly noted in the dissent, the State presented absolutely no evidence of Humphries's prior conviction for a serious offense other than the improperly admitted stipulation. It is irrelevant that the State "'was fully prepared to present evidence'" of the prior conviction. *Humphries*, 170 Wn. App. at 809 (Dwyer, J., dissenting) (quoting *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002)). Instead, we focus on evidence that was actually admitted at trial, *Smith*, 148 Wn.2d at 139, and because no untainted evidence of a prior conviction for a serious

---

argument that Humphries's subsequent signature constituted a waiver fails under even the simplest waiver analysis.

offense was admitted at trial, no reasonable jury could have found that element proved.[6]

### b. *Ineffective Assistance of Counsel*

Humphries also argues that his assault conviction should be reversed because he received ineffective assistance of counsel.[7] The Court of Appeals held that Humphries failed to show ineffective assistance of counsel. We agree.

The defendant has the burden of establishing ineffective assistance of counsel. To prevail, the defendant must show that (1) counsel's representation was deficient, that is, it fell below an objective standard of reasonableness and (2) there was prejudice, measured as a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668,

---

[6] We disagree with the dissent that because the error in this case involved the *exclusion* of evidence under *Old Chief*, our harmless error analysis must be altered for this context. Dissent in part at 13. The dissent argues that we should embrace a new, unprecedented harmless error test. According to the dissent's new analysis, because the stipulation *precluded* the State from introducing any additional evidence, our harmless error analysis must go beyond the evidence that the jury heard and be changed to what would likely be produced but for the stipulation. Our harmless error analysis has always been focused in reference to evidence before the jury and not some hypothetical, "but for" or "inevitable admission" variant that would alter our harmless error analysis. What the jury *heard* is what matters—not what it *could have* heard.

[7] There is an argument that the issue is not before this court. The decision and the briefing is a bit muddled on this issue, with general references to convictions, trials, and reversal without specifying which conviction is being discussed. Regarding the ineffective assistance of counsel claim, Humphries seems to have challenged the assault conviction as based on propensity evidence that could affect both convictions. Thus, the Court of Appeals' statement that he did not challenge the assault conviction is overbroad. Moreover, any propensity reasoning would have had its genesis in the stipulation, which makes it difficult to separate the two issues.

687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Judicial review of an attorney's performance is highly deferential, *Strickland*, 466 U.S. at 689, and such performance is not deficient if it can be considered a legitimate trial tactic, *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996).

Here, Humphries argues that because his attorney failed to request an instruction limiting the jury's consideration of the stipulation, the jury was allowed to improperly consider Humphries's prior "serious offense" as propensity evidence for the assault charge. In order to prevail on his ineffective assistance of counsel claim, Humphries must show that not requesting a limiting instruction fell below an objective standard of reasonableness and resulted in prejudice. Where an attorney does not request a limiting instruction regarding a prior conviction, courts have applied a presumption that the omission was a tactical decision to avoid reemphasizing prejudicial information. *State v. Price*, 126 Wn. App. 617, 649, 109 P.3d 27 (2005); *State v. Barragan*, 102 Wn. App. 754, 762, 9 P.3d 942 (2000); *see also Stamps v. Rees*, 834 F.2d 1269, 1276 (6th Cir. 1987). Therefore, because we presume the action is a reasonable tactical decision, the failure to request a limiting instruction under the circumstances cannot establish an ineffective assistance of counsel claim.

Humphries attempts to avoid this presumption by arguing that the prior conviction would not have been "reemphasized" if a limiting instruction had been

requested at the time the evidence was introduced. This argument, however, splits

hairs, and although some cases use "reemphasize"—which arguably supports

Humphries's argument—others recognize that the tactic is to avoid giving prior

convictions "undue attention."[8] Humphries's counsel did not request a limiting

instruction, and this is presumed to be a reasonable defense tactic. Humphries has

failed to carry his burden in demonstrating that his counsel's performance was

deficient, and his ineffective assistance of counsel claim fails.

---

[8] *Compare Price*, 126 Wn. App. at 649 (using "'reemphasize'" (quoting *Barragan*, 102 Wn. App. at 762)), *with Rees*, 834 F.2d at 1276 (using "undue attention").

CONCLUSION

The Court of Appeals is reversed in part and affirmed in part. Humphries's unlawful possession of a firearm conviction is reversed and remanded for a new trial. His assault conviction is affirmed.

WE CONCUR:

No. 88234-7

STEPHENS, J. (dissenting in part)—The critical question in this case is whether defense counsel can stipulate to a status element of a charged crime over the defendant's objection. This question turns on the allocation of decision-making authority between client and counsel—a question courts have grappled with since *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). Any modification of the law in this area must be sensitive to the precedent that has served as a measure of effective assistance of counsel and the foundation of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Unfortunately, the majority does not discuss this precedent. Instead, with minimal analysis, it concludes that a trial court cannot accept counsel's decision to stipulate to an element of a charged crime when it knows the defendant disagrees.

I respectfully dissent. The test of when defense counsel's chosen trial strategy must yield to the defendant's objection is not, simply, that the defendant's constitutional rights are directly implicated. Nor does the trial court's knowledge that the defendant disagrees with his lawyer matter in answering the question of whether client or counsel holds ultimate decision-making authority on a particular

issue. Because I agree with the trial court below that Humphries's counsel had the authority to enter into the stipulation despite Humphries's objection, I would affirm. While I agree with the majority that Humphries did not knowingly, intelligently, and voluntarily waive his rights in connection with the stipulation, such a waiver was not required.

*The Decision at Issue Is One of Trial Strategy for Counsel To Make*

Criminal defendants and their counsel often disagree over trial matters, including what motions to bring, what defense theories to argue, whether to challenge a juror, and whether to call or cross-examine particular witnesses. It is therefore well established that counsel must have some decision-making authority, for "[t]he adversary process could not function effectively if every tactical decision required client approval." *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). Countless decisions are made throughout trial. Some require extemporaneous decision making without opportunity to consult with the defendant. And, many require a comprehensive understanding of complex criminal law and procedure "that only trained experts can comprehend their full significance, and an explanation to any but the most sophisticated client would be futile." ABA STANDARDS FOR CRIMINAL JUSTICE: PROSECUTION FUNCTION AND DEFENSE FUNCTION std. 4-5.2 cmt. at 202 (3d ed. 1993). The law thus "afford[s] the attorney a wide latitude and flexibility in his choice of trial psychology and tactics." *State v. Piche*, 71 Wn.2d 583, 590, 430 P.2d 522 (1967); *see In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 733, 16 P.3d 1 (2001). As the United States Supreme Court

succinctly put it, "the lawyer has — and must have — full authority to manage the conduct of the trial." *Taylor*, 484 U.S. at 418.

Decisions by counsel have been given effect as to most trial matters, including scheduling matters, *New York v. Hill*, 528 U.S. 110, 115, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000), what arguments to pursue, *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983), what evidentiary objections to raise, *Henry v. Mississippi*, 379 U.S. 443, 451, 85 S. Ct. 564, 13 L. Ed. 2d 408 (1965), and what agreements to make regarding the admission of evidence, *Hill*, 528 U.S. at 115 (citing *United States v. McGill*, 11 F.3d 223, 226-27 (1st Cir. 1993)). Courts have also recognized that a defendant must accept counsel's decision regarding whether to forgo cross-examination, *Taylor*, 484 U.S. at 418, whether to call certain witnesses, *id.*, whether to request a lesser included offense instruction, *State v. Grier*, 171 Wn.2d 17, 31-32, 246 P.3d 1260 (2011), whether to admit guilt in the penalty phase, *In re Stenson*, 142 Wn.2d at 735-36, and whether to present evidence of insanity during the penalty phase of a capital case, *State v. Cross*, 156 Wn.2d 580, 608, 132 P.3d 80 (2006).

This is not to say the defendant is kept out of the loop; "[a]n attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy." *Florida v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004) (quoting *Strickland*, 466 U.S. at 688). "That obligation, however, does not require counsel to obtain the defendant's consent to 'every tactical decision.'" *Id.* at 187 (quoting *Taylor*, 484 U.S. at 417-18).

-3-

Nor is counsel "obliged to obtain a written waiver or instructions from the defendant as to each and every turn or direction the accused wants his counsel to take." *Piche*, 71 Wn.2d at 590. Rather, "an attorney has authority to manage most aspects of the defense without obtaining his client's approval." *Nixon*, 543 U.S. at 187.

While defense counsel has wide latitude over matters of trial strategy, certain decisions are of such moment that ultimate decision-making authority must reside with the defendant. These decisions are of such a "fundamental nature" and "so crucial to the accused's fate" that the accused must make them. ABA STANDARDS std. 4-5.2 cmt. at 201. They include whether to be present during trial, *Taylor*, 484 U.S. at 418 n.24, whether to testify, *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987), whether to waive the right to counsel, *Faretta v. California*, 422 U.S. 806, 834, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), whether to enter a guilty plea, *Brookhart v. Janis*, 384 U.S. 1, 7-8, 86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966), whether to agree to an abbreviated prima facie trial, *id.*, whether to waive the right to a jury trial, *Jones*, 463 U.S. at 751, and whether to take an appeal, *id. See* ABA STANDARDS std. 4-5.2(a), at 199-200 (listing decisions over which the accused has ultimate decision-making authority).

The decision to stipulate to a status element of a charged offense does not fall within the categories of decision making that law and tradition have committed to the defendant. While this decision touches upon the defendant's right to require the State prove each element of the crime beyond a reasonable doubt and it waives the right to a jury trial as to the stipulated element, it has never been deemed tantamount

-4-

to a guilty plea. Indeed, courts have been reluctant to find a guilty plea equivalent under more encompassing factual stipulations. In *Nixon*, the United States Supreme Court permitted counsel to concede guilt during the guilt phase of a murder trial even though the defendant did not understand or consent to the concession. 543 U.S. at 188-89. The Court found the concession was not tantamount to a guilty plea because "a guilty plea is 'more than a confession which admits that the accused did various acts,' it is a 'stipulation that no proof by the prosecution need be advanced.'" *Id.* at 188 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242 & n.4, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)). For similar reasons, this court held that a stipulated facts trial is not a guilty plea equivalent. *In re Det. of Moore*, 167 Wn.2d 113, 120-21, 216 P.3d 1015 (2009); *State v. Johnson*, 104 Wn.2d 338, 342, 705 P.2d 773 (1985). If neither the decision to concede guilt nor the decision to enter a stipulated facts trial constitutes a guilty plea equivalent, then the decision to concede a defendant's easily proven criminal history certainly does not. The majority does not contend otherwise.

The majority nevertheless holds that due process requires any decision that implicates a constitutional right must belong to the defendant. Majority at 8. A list of such decisions would surely be long. Under the majority's reasoning, it appears the defendant must knowingly, intelligently, and voluntarily agree to counsel's choice of what witnesses to call, what defense theories to present, when to cross-examine a witness, and what jurors to select. All of these decisions impact the rights of the accused to defend his case, to meet the witnesses against him, to compel the attendance of witnesses on his behalf, and to have an impartial jury. CONST. art. I, §

-5-

22; U.S. CONST. amend. VI. By holding that any infringement on the defendant's constitutional rights necessitates his consent, the majority suggests that many decisions courts have heretofore recognized as within counsel's authority to make are not in fact solely matters of strategic discretion.

The majority relies on *State v. Thomas*, 128 Wn.2d 553, 558, 910 P.2d 475 (1996), but that case does not hold that all constitutional rights require a knowing, intelligent, and voluntary waiver by the defendant. Nor does United States Supreme Court precedent "reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional protection." *Schneckloth v. Bustamonte*, 412 U.S. 218, 235, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Case law requires only that "the waiver of a *fundamental* constitutional right must be made knowingly, voluntarily, and intelligently." *Thomas*, 128 Wn.2d at 558 (emphasis added); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) ("'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights" (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S. Ct. 809, 81 L. Ed. 1177 (1937); *Hodges v. Easton*, 106 U.S. 408, 412, 1 S. Ct. 307, 27 L. Ed. 169 (1882))). This rule appreciates the fact that almost every trial decision implicates some constitutional right of the accused. For example, "[e]ach and every time a defense attorney declines to cross-examine a witness, the attorney technically waives his client's sixth amendment right." *Poole v. United States*, 832 F.2d 561, 564 (11th Cir. 1987). Counsel's failure to object to hearsay evidence essentially waives a defendant's confrontation rights. *Watkins v. Kassulke*,

90 F.3d 138, 141 (6th Cir. 1996). And, deliberately failing to object to the admission of tainted evidence taken from an unlawful search implicates the Fourth Amendment to the United States Constitution. *Henry*, 379 U.S. at 451. Despite their constitutional implications, these decisions have been deemed a part of trial strategy for counsel to make.

Rather than engaging with the weight of authority against its holding, the majority focuses on cases addressing an entirely different question—when can a court *presume* the defendant consents to his counsel's waiver of a constitutional right? For example, the majority dismisses the State's argument that counsel has the authority to stipulate to material facts as a matter of trial tactics by observing that "[i]n none of [the cases cited by the State] did the defendant expressly object to the stipulation." Majority at 8. The very focus of the majority's discussion confuses the question of when an on-the-record colloquy is required—which is not at issue here[1]—with the critical question of whose decision controls. If the decision to stipulate to a status element belongs to counsel, as I believe it does, then it is irrelevant whether Humphries initially objected or later agreed to the stipulation. *United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (noting that "if consultation and consent by the client are not required with regard to these tactical

---

[1] That question was at issue in *State v. Woods*, 143 Wn.2d 561, 609, 23 P.3d 1046 (2001) (discussing when defense counsel, as opposed to the court, bears responsibility for informing the defendant of a particular right and explaining the merits and demerits of waiving such right).

decisions, the client's expressed disagreement with counsel's decision cannot somehow convert the matter into one that must be decided by the client").

The Constitution does not obligate counsel to accept the client's decision in every instance. Rather, the opposite is true. The United States Supreme Court has interpreted a defendant's Sixth Amendment right to assistance of counsel as more encompassing than the mere presence or advice of counsel. *Strickland*, 466 U.S. at 685. It "envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Id.* In other words, "'the right to counsel is the right to the *effective* assistance of counsel.'" *Id.* at 686 (emphasis added) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). In fulfilling the "overarching duty" to advocate for the defendant's cause, defense counsel must "bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.* at 688.

The majority's decision potentially undermines counsel's ability to act effectively. This case presents a prime example. The State accused Humphries of first degree unlawful possession of a firearm. Clerk's Papers (CP) at 9-11. An element of that charge is that Humphries owned, possessed, or controlled a firearm after having been convicted of a serious offense. RCW 9.41.040. Humphries maintained his innocence throughout trial; his defense focused on the fact that no weapons or ammunition were found on him or at the scene of the alleged shooting. Verbatim Report of Proceedings (Oct. 13, 2010) at 46-47. Despite this lack of physical evidence, his attorney was concerned the jury would be distracted by

Humphries's criminal history, which included dispositions for first degree robbery, second degree robbery, and attempted second degree robbery. CP at 11. Counsel advised Humphries it would be wise to stipulate to a prior serious offense conviction, which would preclude the State from introducing evidence of his past crimes. Tr. of Proceedings (Oct. 12, 2010) at 5-6. No one—not even Humphries or the majority— questions the wisdom of counsel's advice. Evidence of Humphries's past crimes could only prejudice the jury against him. *Old Chief v. United States*, 519 U.S. 172, 185, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) ("there can be no question that evidence of the name or nature of the prior offense [necessary to establish a prior qualifying conviction] generally carries a risk of unfair prejudice to the defendant"). The State could easily prove the element of a prior serious offense conviction, as evinced by the criminal history records it presented at Humphries's subsequent sentencing. Humphries nevertheless refused to stipulate. By holding that counsel could not pursue his trial strategy in the face of Humphries's expressed disapproval, the majority expands constitutional waiver analysis beyond the class of decisions previously recognized as involving fundamental rights.

Worse yet, the majority's holding places trial judges at risk of violating the defendant's Sixth Amendment rights in an effort to secure a valid waiver. As the United States Supreme Court has explained, the "Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Strickland*, 466 U.S. at 686. Under the majority's holding, when a defendant objects to counsel's

trial strategy, the trial judge must inquire whether counsel has advised the defendant about the decision, thereby potentially exposing attorney-client confidences and counsel's trial strategy and intruding upon the attorney-client relationship. *Thomas*, 128 Wn.2d at 557 n.2; *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 317, 868 P.2d 835 (1994). Intrusions into the attorney-client relationship have been recognized as sufficient grounds for an ineffective assistance of counsel claim. *See Blanco v. Singletary*, 943 F.2d 1477 (11th Cir. 1991) (involving a judge's inquiry into why certain witnesses the defendant wanted to be called were not called by defense counsel).

It is important to acknowledge that the majority raises valid concerns about the defendant's authority to make trial decisions when he must suffer the consequences. Some commentators have criticized the division of authority recognized by the United States Supreme Court and formalized in the ABA Standards. *See, e.g.,* Pamela R. Metzger, *Fear of Adversariness: Using* Gideon *to Restrict Defendant's Invocation of Adversary Procedures*, 122 YALE L.J. 2550 (2013) (arguing the defendant should have greater authority over decisions affecting constitutional rights). But even critics recognize the lines that have heretofore been drawn. *See id.* at 2556-67 (acknowledging defendant's authority is limited to decisions deemed "fundamental"); JAMES J. TOMKOVICZ, THE RIGHT TO THE ASSISTANCE OF COUNSEL: A REFERENCE GUIDE TO THE UNITED STATES CONSTITUTION 74 (2002) (recognizing that a "majority of the Supreme Court has rejected" the position that counsel must defer to the defendant's wishes on

significant questions). The division of authority between counsel and client attempts to balance the defendant's ability to choose his own defense with his right to effective assistance of counsel. *See Faretta*, 422 U.S. at 819 (recognizing that the right to counsel "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense"). True, the right to counsel "implicitly embodies a 'correlative right to dispense with a lawyer's help.'" *Id.* at 814 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942)). But once "a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas." *Id.* at 820; *Brookhart*, 384 U.S. at 7-8; *Fay v. Noia*, 372 U.S. 391, 439, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)). The majority's holding must be recognized for what it is: not a limited exception to the traditional division of decision-making authority between client and counsel, but a rejection of the very framework that has supported a large body of law. I would hold that counsel's decision to stipulate to a prior serious offense did not require Humphries's knowing, intelligent, and voluntary waiver of his right to make the State prove this element. Therefore, Humphries suffered no constitutional error—whether framed as a due process or a Sixth Amendment violation. I would affirm on this basis.

*If the Stipulation Violated Humphries's Rights, the Error Was*
*Harmless beyond a Reasonable Doubt*

Even if the trial court committed constitutional error in accepting defense counsel's stipulation that Humphries "had previously been convicted of a serious offense" over Humphries's objection, I disagree with the majority that the error was prejudicial. CP at 12.[2]

The majority correctly observes that constitutional errors are subject to harmless error analysis and are considered "harmless when there is no reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." Majority at 11. In determining whether defense counsel's stipulation was harmless, the majority echoes Judge Dwyer's reliance on the overwhelming untainted evidence test and considers only the absence of other evidence introduced at trial to prove a prior serious offense conviction. *Id.* (citing *State v. Humphries*, 170 Wn. App. 777, 809, 285 P.3d 917 (2012) (Dwyer, J., dissenting)). Noting that the State presented no evidence in light of the stipulation, the majority concludes that the error was not harmless. It rejects as "irrelevant" the fact "that the State 'was fully prepared to present evidence' of the prior conviction." *Id.* (internal quotation marks omitted) (quoting *Humphries*, 170 Wn. App. at 809 (Dwyer, J., dissenting)).

The majority contends its conclusion is supported by *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002). But, *Smith* involved the erroneous *admission*

---

[2] Counsel also stipulated that Humphries "had previously received written notice that he was ineligible to possess a firearm" and that he "knew that he could not possess a firearm." CP at 12. These factual stipulations seem to have been gratuitous. As instructed, the jury did not need to accept these facts in order to convict. *Id.* at 26 (Instruction 8).

of evidence. Here, we are concerned with an alleged error (acceptance of the stipulation) that operated to preclude the State from introducing otherwise admissible evidence. In other words, the error at issue, if there was error, involved the erroneous *exclusion* of evidence, and we must examine the question of harmless error in this context. Relying on a test that looks only to other evidence admitted at trial is both artificial and unhelpful. Once defense counsel offered to stipulate to a prior serious offense conviction, the State was obligated to accept this stipulation and was precluded from presenting evidence of Humphries's criminal history. *Old Chief*, 519 U.S. at 190-92.[3] Because the alleged error in this case had a mandatory exclusionary effect, a meaningful harmless error analysis requires that we look beyond what was presented to the jury and consider the effect of the erroneous decision at issue. This is consistent with the essential purpose of harmless error inquiry, which asks, "Was the defendant afforded, not a perfect but, rather a fair trial?—for the constitution guarantees no one a perfect trial." *State v. Green*, 71 Wn.2d 372, 373, 428 P.2d 540 (1967). To answer this question, we look to the record; "if the record supports a finding that the jury verdict would be the same absent the error, harmless error may be found." *State v. Berube*, 150 Wn.2d 498, 506, 79 P.3d 1144 (2003).

---

[3] *Old Chief* does recognize that the prosecution can in some circumstances present redacted criminal records without the name and nature of the prior conviction as supplemental evidence of a defendant's past conviction notwithstanding a defendant's stipulation. 519 U.S. at 191 n.10. But, redacted criminal records would have had no evidentiary value in this case. Here, the names of Humphries's prior convictions were needed to establish their qualification as "serious offenses."

The record in this case establishes that the State had certified copies of Humphries's prior criminal history, CP at 56-88, and that the stipulation was admitted in lieu of the State's proffer. Absent the stipulation, the State would have submitted its evidence to establish Humphries's prior convictions for a serious offense. This evidence, beyond simply proving the element of a "prior serious offense," carried a risk of unfair prejudice to Humphries. *See Old Chief*, 519 U.S. at 185 (recognizing "risk of unfair prejudice to the defendant"). Defense counsel's stipulation was therefore harmless beyond a reasonable doubt. If admission of the stipulation violated Humphries's constitutional rights, I would affirm on this alternative basis.

_____

No. 88234-7

MADSEN, C.J. (concurring in the dissent)—Although I agree with the thorough dissent by Justice Stephens, I write separately to underscore the untenable position that the majority creates for trial counsel and the court on retrial.

The State charged Mario Humphries with third degree assault and unlawful possession of a firearm based on three prior convictions for first degree robbery, second degree robbery, and attempted robbery. In order to prove the crime of unlawful possession of a firearm, the State was entitled to establish these convictions (necessary to prove unlawful possession of a firearm) by placing copies of the judgment and sentences into evidence for the jury to consider. Rather than allowing this damaging evidence of prior robbery convictions, defense counsel stipulated that Humphries had a prior serious felony, without disclosing the nature or the number of the convictions.

In my view, if counsel in this case had failed to offer such a stipulation and instead required the State to submit the actual judgment and sentence documents, his failure to stipulate would have fallen below the standard of proficient counsel, that failure to stipulate could not be excused as "tactical," and the failure would be prejudicial.

The majority's new rule encourages disputes between clients and counsel in a decision that is so clearly about strategy and sets up unnecessary claims of ineffective assistance of counsel. It is also frustrating because a retrial will result in either the State presenting damaging evidence of prior robberies or the defendant stipulating, as was done here. A stipulation is clearly less prejudicial than the proof of prior robberies. The majority's decision imposes an unnecessary "do over" in a case where any effective counsel would offer the stipulation counsel offered here, without which the defendant's chances of success would be greatly diminished.

I decline to join an opinion that confuses the role of counsel in making the sort of strategy calls at issue here or in setting defense counsel up for claims of ineffective assistance of counsel. The court should affirm.

Madsen, C.J.