# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
# DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74823-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW DAVID HUTTUNEN, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 12, 2017 |
| | ) | |

VERELLEN, C.J. — A jury convicted Matthew Huttunen of felony violation of a domestic violence no-contact order. For the first time on appeal, Huttunen argues the State failed to prove its case because his stipulation that he had two prior convictions for violating a no-contact order was inadequate. Specifically, he asserts his stipulation did not explicitly state that the previously violated no-contact orders had been issued under qualifying provisions listed in RCW 26.50.110(5). Because our Supreme Court's recent opinion in State v. Case is dispositive of Huttunen's claim, we affirm.[1]

## FACTS

On September 12, 2015, Snohomish County Sheriff's Deputy Troy Koster drove into Lake Stickney Park and noticed a blue Chevy Cavalier that belonged to Alicia Morasse. Deputy Koster knew Morasse and saw her in the passenger seat. He did not recognize the man in the driver's seat, but later identified him as Matthew Huttunen.

---

[1] 187 Wn.2d 85, 384 P.3d 1140 (2017).

When Huttunen saw Deputy Koster, he looked panicked, started the car, and sped away. Deputy Koster searched his computer and found a no-contact order restraining Huttunen from contacting Morasse. He obtained Huttunen's photo and recognized him as the driver.

Debbie Randall was walking her dog near the park when she saw Huttunen speed by in the driver's seat of the blue Cavalier with a police car in pursuit. Randall observed Huttunen turn into a driveway. A few seconds later, she saw Huttunen run through the woods.

Deputy Arthur Wallin, a dog handler, was also nearby and heard Deputy Koster's radio broadcast about Morasse's blue Cavalier. Deputy Wallin located the blue Cavalier and pulled Morasse over. Based on information from Randall, Deputy Wallin conducted a dog track through the woods near the park and found Huttunen.

The State charged Huttunen with one count of felony violation of a domestic violence no-contact order under RCW 26.50.110(5). The charging document alleged that on September 12, 2015, Huttunen

> with knowledge that [he] was the subject of a protection order, restraining order, or no contact order pursuant to RCW 7.90, 10.99, 26.09, 26.10, 26.26, 26.50, or 74.34 . . . issued by Everett Municipal Court . . . protecting Alicia Morasse, and said order being valid and in effect, did violate the restraint provisions of the order issued pursuant to RCW 7.90, 10.99, 26.09, 26.10, 26.26, 26.50, or 74.74 and the defendant had contact with the protected party and had at least two prior convictions of a no contact order issued under RCW 10.99, 26.09, 26.10, 26.26, 26.50, or 74.34 or a valid foreign protection order as defined in RCW 26.52.020.[2]

Before trial, the State produced certified copies of Huttunen's two prior convictions for violating a domestic violence no-contact order, one a misdemeanor and

---

[2] Clerk's Papers (CP) at 128.

one a felony. Defense counsel conceded that the convictions established an element of the crime charged and asked only that they be redacted before shown to the jury. Defense counsel also suggested Huttunen might stipulate to the two prior convictions, "assuming at that point [the State] would not need to have any evidence of that put in front of the jury."[3]

Morasse, Randall, and Deputies Koster and Wallin testified at trial. Morasse testified that she and Huttunen had dated for years and would be together had the courts not gotten involved. She stated that the person who had driven her car and fled on September 12, 2015 was someone named Bryson. Morasse testified it was a "major" coincidence that Huttunen was found in the same area.[4]

The State moved, without objection from defense counsel, to admit a copy of the five-year domestic violence no-contact order requiring Huttunen to stay away from Morasse issued by Everett Municipal Court in 2014. The trial court admitted the no-contact order as exhibit 4. The State also moved to admit copies of Huttunen's two prior convictions for violating a domestic violence no-contact order. The trial court provisionally admitted copies of the convictions as exhibits 5 and 6, anticipating a stipulation to the convictions. Defense counsel agreed with the State's proposed language in the stipulation, stating, "I think it is the statutory language."[5] Defense counsel stated she would not object to exhibits 5 and 6 being admitted as long as they were not provided to the jury.

---

[3] Report of Proceedings (RP) (Jan. 11, 2016) at 11.

[4] RP (Jan. 12, 2016) at 145.

[5] RP (Jan. 11, 2016) at 97.

The next morning, defense counsel informed the trial court that Huttunen agreed to stipulate to the two prior convictions. The following discussion occurred:

DEFENSE: And, Your Honor, this is something that I discussed with my client yesterday and I've shown him the proposed WPIC instruction this morning and confirmed with him that this would be in order to prevent the jury from seeing the actual sentencing documents, and I believe he is in agreement that he would prefer to proceed this way.

COURT: Okay.

DEFENSE: We have no objection to Counsel's proposed language.

COURT: All right. With the modification, I was going to substitute the word "a" for the word "the," because I didn't want them thinking that he had been twice previously convicted for violating the provisions of the court order that we're talking about here.

DEFENSE: And no objection to that, Your Honor.

COURT: All right. And my recollection is that Exhibits 3 and 4 were admitted yesterday. Five and 6 were provisionally admitted, assuming the stipulation goes forward, which I'll discuss with the defendant now.

So, Mr. Huttunen, you understand that the proposal is that I read the stipulation that you've looked at to the jury in lieu of admitting and having go back to the jury the previous convictions --

HUTTUNEN: Yes.

COURT: -- and requiring the State to prove that as an element of the -- well, having those go back in support of the State's element about the two previous convictions. And is it true that you've discussed that with [defense counsel]?

HUTTUNEN: Yes, Your Honor.

COURT: And so are you in agreement with proceeding this way?

4

> HUTTUNEN:    Yes, Your Honor.
>
> COURT:    Do you have any questions at all about the stipulation or how we're proceeding?
>
> HUTTUNEN:    No, Your Honor.
>
> COURT:    Okay.  So then in that case [exhibits] 5 and 6 will be admitted but not go to the jury.[6]

Near the end of trial, the judge read to the jury Huttunen's stipulation that "the parties have agreed certain facts are true.  So you're to accept as true the following facts:  The defendant has twice been previously convicted for violating the provisions of a court order."[7] Neither party objected to the stipulation or to the to-convict instruction.

The to-convict instruction mirrored the stipulation and said:

> To convict the defendant of the crime of felony violation of a court order, each of the following five elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 12th day of September, 2015, there existed a no-contact order applicable to the defendant;
>
> (2) That the defendant knew of the existence of this order;
>
> (3) That on or about said date, the defendant knowingly violated a provision of this order;
>
> (4) That the defendant has twice been previously convicted for violating the provisions of a court order; and
>
> (5) That the defendant's act occurred in the State of Washington.[8]

This instruction mirrored the pattern jury instruction.[9] Neither party objected to the

---

[6] RP (Jan. 12, 2016) at 102-103.

[7] Id. at 106.

[8] CP at 121.

[9] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 36.51.02, at 674 (4th ed. 2016).

instruction. The jury returned a guilty verdict.

Huttunen appeals.

## ANALYSIS

For the first time on appeal, Huttunen argues the State failed to prove its case because his stipulation was inadequate. Specifically, he asserts his stipulation did not explicitly state that the previously violated no-contact orders had been issued under qualifying provisions listed in RCW 26.50.110(5). The Supreme Court's recent opinion in Case is dispositive of Huttunen's claim.

In Case, the State charged the defendant with one count of felony violation of a domestic violence no-contact order under RCW 26.50.110(5), and the defendant stipulated he had "at least two prior convictions for violating the provisions of a protection order, restraining order, or no-contact order issued under Washington State law."[10] For the first time on appeal, the defendant argued that "the State presented insufficient evidence because it failed to show the prior convictions he stipulated to were based on violations of *qualifying* orders."[11] The Court of Appeals agreed with the defendant, holding "the State failed to satisfy the threshold requirement that Case's prior convictions were for violating qualifying court orders."[12] The Supreme Court granted review and reversed.[13]

---

[10] Case, 187 Wn.2d at 87-89.

[11] Id. at 89-90 (citing State v. Case, 189 Wn. App. 422, 423, 358 P.3d 432 (2015)).

[12] Id. at 90 (citing Case, 189 Wn. App. at 424).

[13] Id. at 90-93.

6

The Supreme Court held the defendant's stipulation was sufficient to prove the defendant had been convicted of violating qualifying no-contact orders, even if the stipulation did not mirror the statutory language for qualifying provisions.[14] In the context of a detailed charging document and a sidebar acknowledging the purpose of the stipulation, Case stipulated he had two prior qualifying convictions as alleged in the charging information, and defense counsel did not timely object or take exception that the stipulation was insufficient.[15]

Similarly here, Huttunen's counsel did not object or take exception that the stipulation was insufficient. In the context of the charging document and colloquy in court, we are satisfied that Huttunen stipulated he had two prior convictions for violating a qualifying no-contact order. Absent a timely and specific objection from defense counsel, the stipulation established that Huttunen agreed he had two prior qualifying convictions under RCW 26.50.110(5) as alleged in the charging information and was therefore sufficient.

Further, "whether the prior convictions met the qualifying statutory requirements is a threshold legal determination to be made by the trial judge, not a question for the jury."[16] As the Supreme Court noted in Case, "[w]hether the prior convictions qualify under RCW 26.50.110(5) is a substantially similar question to whether a prior no-contact order was valid—a question of law to be decided by a judge, not a jury."[17] "If the prior convictions do not qualify, they are almost certainly inadmissible on this point

---

[14] Id. at 91-92.

[15] Id.

[16] Id. at 92.

[17] Id.

under ER 404(b)."[18] Huttunen has failed to show that his stipulation was based on nonqualifying, and thus inadmissible, prior convictions.

Finally, because the stipulation adequately established the element of the offense, the to-convict instruction was sufficient.[19]

Affirmed.

WE CONCUR:

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 JUN 12 AM 9: 54

---

[18] Id.

[19] See id. at 91 ("'When the parties stipulate to the facts that establish an element of the charged crime, the jury need not find the existence of that element, and the stipulation therefore constitutes a waiver of the right to a jury trial on that element. The defendant also waives the right to require the State to prove that element beyond a reasonable doubt.'" (internal quotation marks omitted) (quoting State v. Humphries, 181 Wn.2d 708, 714-15, 336 P.3d 1121 (2014))).