

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
) No. 75655-9-I
    Respondent, )
) DIVISION ONE
v. )
) UNPUBLISHED OPINION
CHARLIE SHAKER HELO, )
)
    Appellant. ) FILED: April 30, 2018

TRICKEY, J. — A jury convicted Charlie Helo of second degree assault with aggravating circumstances based on an incident involving his nephew, Tawfique Helo.[1] After trial, Charlie moved for relief from judgment, alleging ineffective assistance of counsel. The trial court denied the request and Charlie appeals. Because Charlie cannot demonstrate the prejudice required for ineffective assistance, we affirm.

### FACTS

For several years, Tawfique stored one of Charlie's vehicles at his home as a favor to Charlie. In July 2013, Charlie called and sent text messages demanding that Tawfique return the vehicle. Tawfique and his cousin, Joseph Helo, drove the vehicle to Charlie's house, while Tawfique's girlfriend, Ashley Newcomb, followed in his car.

---

[1] We will refer to members of the Helo family by their first names for clarity. No disrespect is intended.

When Tawfique arrived at Charlie's house, he began recording a video with his cell phone. Charlie came out of his house with a gun and a cell phone connected to the Marysville Police Department. Charlie pointed the gun at Tawfique and the two exchanged heated words. Charlie's two young children came outside and stood next to their father as he pointed the weapon and yelled at Tawfique. Molli Helo, Charlie's wife, did not come out of the house. Newcomb and Joseph waited nearby in Tawfique's car. Charlie and Tawfique exchanged more insults and accusations at each other before Tawfique departed in his car.

Marysville Police Officer Chris Farley was speaking to Charlie on the phone when Tawfique arrived at Charlie's house. Charlie was rambling and not making sense. Charlie told Officer Farley that he had a gun. Officer Farley heard the slide being racked on a semiautomatic pistol, which was the sound of a bullet being chambered into the gun. Officer Farley apprised dispatch and other police units of the situation so that the closest unit could respond.

Another unit was closer to Charlie's house and responded to his call. Officer Farley went to the location where a police unit had stopped Tawfique and Joseph.[2] Officer Farley watched the cell phone video of the incident and then released Tawfique and Joseph.

Marysville Police Officer Brad Smith contacted Charlie at his house in response to the dispatch. When Officer Smith arrived, Tawfique had already departed and Charlie was inside his house. Charlie made no mention of the events that had just occurred. Instead, Charlie talked at length about having cancer.

---

[2] Newcomb was no longer in the vehicle, having been dropped off because she had a warrant and did not want to be stopped by the police.

2

Similarly, Molli spoke only about Charlie's cancer and "[c]ommon everyday things."[3] Neither Molli nor Charlie discussed the incident or reported any information about the altercation to Officer Smith. Officer Smith felt that the discussion about Charlie's cancer was an attempt to draw his attention away from the altercation between Tawfique and Charlie.

At trial, Helo claimed that he was acting in self-defense and that the State could not prove that Tawfique had the requisite fear to support a second degree assault charge. The State played Tawfique's cell phone video for the jury. Charlie and Molli did not testify.

At trial, Joseph testified on Charlie's behalf. He stated that Tawfique had his firearm in his lap while driving to Charlie's house. During the altercation, Tawfique had his gun in a holster on his hip and kept his hand next to the holstered weapon. He testified that Tawfique was angry, wanted to agitate Charlie, and began yelling at Charlie as soon as they arrived at the house. According to Joseph, Tawfique was acting as a manipulator and instigator during the incident.

Joseph gave equivocal testimony about whether he saw Charlie point a gun at Tawfique. Joseph stated that Charlie initially pointed his finger to direct Tawfique to get off the property and did not point his gun at Tawfique until Tawfique failed to leave the property and continued provoking Charlie. Joseph then stated that he had not seen a gun in Charlie's hand. Based on this later testimony, Joseph only saw Charlie holding a gun when he watched the cell phone video during the police stop with Officer Farley.

---

[3] Report of Proceedings (RP) (Feb. 17, 2016) at 7.

3

Joseph testified that Tawfique had previously tried to convince him to tie up and rob Charlie, Molli, and their children. Tawfique wanted Charlie's prescription pills. Joseph said that he had informed Charlie of Tawfique's plan. Joseph reiterated several times that Tawfique was "manipulating" and "being an instigator."[4] He testified that Tawfique's behavior had recently changed, possibly due to "supplements."[5]

Newcomb offered contradicting testimony. She testified that Charlie pointed a gun at Tawfique without provocation. According to Newcomb, Tawfique was holding only his cell phone and the keys to Charlie's vehicle in his hands during the incident. She stated that Charlie was yelling and acting crazy.

Tawfique testified that he was afraid when Charlie pointed the gun toward him because the gun could go off accidentally and shoot him or Charlie's children. Tawfique stated that he had a concealed weapons permit and owned a firearm. Tawfique testified that he did not typically take the gun out of the house, and had left his gun at his house on the day of the incident.[6] Subsequently, Charlie elicited testimony that Tawfique had owned another gun that had been stolen from Tawfique's vehicle.

In closing arguments, Charlie's trial counsel emphasized Joseph's testimony to support the self-defense claim. Specifically, counsel reiterated Joseph's statements about Tawfique having his hand on his belt next to a holstered gun. He also reminded the jury of Joseph's testimony that Tawfique had plans to

---

[4] RP (Feb. 17, 2016) at 18, 20.
[5] RP (Feb. 17, 2016) at 18.
[6] RP (Feb. 16, 2016) at 77-78.

4

tie up and rob Charlie and his family, and that Joseph had informed Charlie of these plans. Charlie's trial counsel highlighted this evidence to explain the context of Charlie's actions and to emphasize that Charlie was entitled to defend himself in light of this information.

The jury convicted Charlie of second degree assault. The jury also found the aggravating factors of domestic violence and commission of the crime while armed with a firearm.

Following his conviction, Charlie brought a motion for relief from judgment. He requested that the trial court vacate his conviction and grant a new trial due to ineffective assistance of counsel. He argued that his trial counsel was deficient in the investigation and preparation of his case.

The trial court held a hearing on the motion. Charlie requested either a new trial or an evidentiary hearing on the issue of ineffective assistance of counsel. He argued that his counsel failed to interview and prepare witnesses, including himself, Molli, and his brother, Tony Helo. Charlie claims that he had wanted to testify, which might have bolstered the self-defense claim. Charlie also raised the issue of a threatening text message from Tawfique to Charlie that had been provided to trial counsel but never investigated. Charlie introduced a declaration from an anonymous source claiming to have been solicited by Tawfique to kill Charlie. Charlie cited this evidence to support allegations of insufficient investigation and presentation of evidence in his case. Finally, Charlie claimed that his attorney-client relationship with trial counsel was deficient and that counsel did not communicate with him.

The trial court stated that Charlie's trial counsel had argued viable defense theories, made strategic decisions about witness testimony, and properly relied on an investigator for witness interviews. Additionally, the trial court determined that the text message was a screen shot with insufficient foundation for admission as evidence. The trial court denied Charlie's motion and sentenced him to 48 months of confinement.

Charlie appeals.

## ANALYSIS

### Ineffective Assistance of Counsel

Charlie argues that the trial court erred by failing to grant him either a new trial or an evidentiary hearing because he received ineffective assistance of counsel. Specifically, Charlie alleges that his trial counsel was deficient in investigating and presenting his self-defense claim. This allegation includes trial counsel's failure to investigate and use Molli as a witness. Charlie claims that he was prejudiced by his counsel's failure to present compelling evidence of Tawfique's history of aggressive behavior toward him, which would have presented a "materially different picture" of the incident.[7] But even if Charlie's trial counsel's performance was deficient as argued, Charlie cannot demonstrate a reasonable probability that the additional information would have yielded a different result.

Effective assistance of counsel is guaranteed by the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution. State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996). To

---

[7] Appellant's Opening Br. at 18.

prevail on a claim of ineffective assistance of trial counsel, a defendant must prove both deficient performance and prejudice. State v. Jones, 183 Wn.2d 327, 339, 352 P.3d 776 (2015).

Establishing deficient performance requires a showing that counsel's representation fell below an objective standard of reasonableness based on consideration of all the circumstances. State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "[S]crutiny of counsel's performance is highly deferential and courts will indulge in a strong presumption of reasonableness." Thomas, 109 Wn.2d at 226. Legitimate trial tactics do not establish deficient performance. State v. Humphries, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014). But failure to investigate or interview witnesses may support a claim of ineffective assistance of counsel. State v. Ray, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991).

Prejudice sufficient to support a claim of ineffective assistance of counsel occurs when counsel's errors were so serious as to deprive the defendant of a fair trial. Hendrickson, 129 Wn.2d at 78. The defendant must show a "reasonable probability that, but for counsel's errors, the result of the trial would have been different." Hendrickson, 129 Wn.2d at 78.

A claim of ineffective assistance of counsel is a mixed question of law and fact that an appellate court reviews de novo. Jones, 183 Wn.2d at 338-39.

At trial, Charlie's trial counsel presented evidence to support the self-defense claim. This included evidence to establish Tawfique's antagonistic behavior and the danger he potentially posed to Charlie. Charlie's counsel elicited

testimony that Tawfique was armed with a gun and acted as an instigator during the altercation. The jury also heard about Tawfique's plan to tie up and rob Charlie and his family, and that Charlie knew of this plan. Charlie's counsel argued that Charlie was aware of these facts and acted reasonably in responding to Tawfique in light of this information. Charlie's counsel also emphasized that Tawfique did not appear frightened during the incident as illustrated by the video evidence that showed Tawfique yelling profanities and insults at Charlie, rather than leaving quickly at Charlie's request.[8]

Despite these efforts, Charlie's trial counsel faced the challenge of the cell phone video depiction of the incident. The video clearly showed Charlie coming out of his house and pointing a gun at Tawfique, without apparent provocation. Other than Joseph's testimony, the evidence presented at trial did not establish that Tawfique had a gun. Furthermore, Charlie did not mention a gun, threats, or his fear of Tawfique to Officer Smith immediately after the incident.[9] Given the graphic video evidence of Charlie's behavior and his failure to report anything

---

[8] Trial counsel argued that Tawfique did not have the necessary fear to support an assault conviction as seen by his behavior on the video recording. This argument was also bolstered by Joseph's testimony about Tawfique engaging with Charlie as an instigator and manipulator.

Charlie's trial counsel also attempted to prove that Charlie did not have a firearm. Charlie admitted to the police that he had a gun. The trial court cited the questions about the firearm as a sound argument for the jury's consideration.

[9] Similarly, Molli's testimony would not have changed the outcome. Molli was not present outside the house during the incident between Charlie and Tawfique. Regardless of what she might have seen or heard, Molli made no mention of the incident to Officer Smith. In light of her failure to report any information to Officer Smith immediately after the incident, Molli would have faced significant challenges to her credibility when testifying. Any testimony about Charlie's fear would have been countered with questions about their failure to express any concerns to the responding officer. Therefore, trial counsel's decision not to call Molli was a legitimate trial tactic and cannot support a claim of ineffective assistance. See Humphries, 181 Wn.2d at 720.

about the incident to the police, there is little probability that additional evidence of the history between Charlie and Tawfique would have changed the outcome of the trial.

Given the existing evidence at trial, Charlie has not shown that any errors by his trial counsel were so serious that the result of the trial would have been different absent the errors. See Hendrickson, 129 Wn.2d at 78. Thus, he has failed to demonstrate the prejudice required to succeed on a claim of ineffective assistance of counsel. Therefore, we conclude that Charlie did not receive ineffective assistance of counsel at trial.

Affirmed.

_Trickey, J_

WE CONCUR:

_Spearman, J._

_Becker, J._

9