2015 OCT 19 AM 9: [illegible]
COURT OF APPEALS DIV I

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73667-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY DEWAYNE PARKER, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: October 19, 2015 |
| | ) | |

Cox, J. — Anthony Parker appeals his judgment and sentence on convictions of multiple counts of assault, human trafficking, promoting prostitution, burglary, kidnapping, unlawful possession of a firearm, witness tampering, and firearm enhancements. He fails in his burden to show that his trial counsel had actual conflicts of interest. Thus, we reject his ineffective assistance of counsel claim. Further, there is a nexus between his convictions of human trafficking and promoting prostitution and the firearm enhancements. And his statement of additional grounds for review does not warrant relief. Accordingly, we affirm the judgment and sentence in this appeal.

In the consolidated personal restraint petition, Parker asserts multiple claims. With one exception, none requires further consideration. His claim that there was an illegal search and seizure of another's cell phones that violated his

privacy rights in his messages on that cell phone requires appointment of counsel and a reference hearing. Accordingly, we transfer the petition to the superior court for appointment of counsel to represent Parker on the illegal search and seizure issue only. The court shall also conduct a reference hearing pursuant to RAP 16.12, enter findings of fact, and transmit such findings to this court for further action. We otherwise dismiss the petition.[1]

The State charged Parker with 11 offenses. Most of the offenses involved J.H. as the alleged victim. Parker allegedly assaulted and kidnapped J.H. and committed the crimes of promoting prostitution and human trafficking while acting as her pimp. These charges were accompanied by firearm allegations.

After a lengthy trial, the jury convicted Parker of all charges. The jury also found by special verdict that he was armed with a firearm. The trial court sentenced him accordingly.

Parker appeals.

He subsequently filed a personal restraint petition. Division Two of this court consolidated his petition for decision with this appeal. As of the filing of this decision, no counsel represents Parker for his personal restraint petition.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Parker argues that his counsel provided ineffective assistance of counsel due to two alleged conflicts of interest. We disagree.

---

[1] We deny, without prejudice, the State's Motion to File Supplemental Appendices to its PRP Response dated September 10, 2015. The State may renew this motion in the superior court for purposes of the reference hearing on the issue of the illegal search and seizure only.

Both the federal and state constitutions provide the right to counsel.[2] The right to counsel includes the right to effective assistance of counsel.[3] This also includes the right to counsel free from conflicts of interest.[4]

The defendant bears the burden to show that an actual conflict of interest adversely affected counsel's performance.[5] The mere possibility of a conflict of interest does not warrant reversal.[6] Instead, the defendant must demonstrate an "actual" conflict of interests, a situation where "'counsel actively represented conflicting interests.'"[7]

"'Whether the circumstances demonstrate a conflict under ethical rules is a question of law, which is reviewed de novo.'"[8]

Here, Parker argues that his attorney had two conflicts of interests. Because Parker fails to show that either alleged conflict was an actual conflict of interest, we hold that he fails in his burden to show ineffective assistance of counsel.

---

[2] U.S. CONST. amend. VI; CONST. art. I, § 22.

[3] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Crawford, 159 Wn.2d 86, 97, 147 P.3d 1288 (2006).

[4] State v. Dhaliwal, 150 Wn.2d 559, 566, 79 P.3d 432 (2003).

[5] Id. at 573.

[6] Id.

[7] Id. (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)).

[8] State v. Reeder, 181 Wn. App. 897, 908, 330 P.3d 786, review granted in part, 337 P.3d 325 (2014) (quoting State v. Regan, 143 Wn. App. 419, 428, 177 P.3d 783 (2008)).

*Representation of Other Clients*

Parker first argues that his counsel's representation of other clients created an actual conflict of interest. We disagree.

Under RPC 1.7(a), "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."[9]

The legal practice of Parker's defense counsel at trial included estate planning and advice to several non-profits. As part of this practice, counsel recommended that his clients donate to certain charities. One charity that he recommended was a non-profit that Officer Taylor, the State's expert witness at trial, had helped to create. After learning that a different police officer had allegedly embezzled funds from the non-profit, Parker's counsel stopped advising his clients to donate to the non-profit.

Here, the trial court noted that it failed to see how the alleged conflict would be an actual conflict of interest or impede counsel's ability to cross-examine the State's expert witness. In response, Parker's counsel argued that it would create the appearance of a conflict of interest, or the appearance that he

---

[9] RPC 1.7(a).

was not vigorously cross-examining the witness. But he conceded that it would not be an actual conflict of interest.

We conclude that Parker's counsel did not have any actual conflict of interest. His description of events fully supports that there was no actual conflict of interest, as does his candid representation to the court. We need not decide whether there was any apparent conflict of interest because that is not the material standard.

None of counsel's clients was connected to the present case. And counsel had advised his clients to stop donating to the non-profit connected to the witness at trial. The fact that he had formerly advised clients to donate money to an organization with which this witness was involved fails to create an actual conflict of interest. There simply is no showing that counsel's representation of other clients had any directly adverse impact on representing Parker.

We note that Parker's counsel extensively cross-examined Officer Taylor at trial. This cross-examination included the non-profit and the investigation into its finances. Thus, Parker cannot show that his counsel was actively representing the interests of his other clients rather than Parker's interests.

Parker argues that his counsel's other clients had "a philanthropic interest in supporting an organization whose primary goal was combating human trafficking." Thus, by representing Parker, counsel was acting against the interest of his clients.

This argument conflicts with both this record and the law. Counsel expressly stated that he advised the other clients against further donations to the nonprofit at issue. Even if we assume that counsel's clients had a general interest in preventing human trafficking, this fails to meet the requirements for an actual conflict of interest under RPC 1.7. Thus, Parker cannot show that his counsel's representation was materially limited by his other clients' interests.

*Witness Against Client*

Parker also argues that his counsel had a conflict of interest because he could have been called as a witness against Parker. Because this record shows otherwise, we disagree.

Under RPC 3.7, "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." The State may call the defense counsel as a witness only if "counsel's testimony is both necessary and unobtainable from other sources."[10]

Here, there was no conflict of interest. Parker's counsel was not likely to be a necessary witness at this criminal trial because the State expressly chose not to call him as a witness.

The alleged conflict of interest rose from Parker's purported witness tampering. The State discovered that Parker had mailed someone on the defense's witness list letters instructing him on what to testify to. The State decided to call this witness in its case-in-chief to introduce these letters.

---

[10] Regan, 143 Wn. App at 430.

Parker's counsel moved to withdraw, stating that there was "a remote chance" he would be called as a witness against Parker. He indicated that his private investigator had spoken with this witness and written a report. But counsel had not personally spoken with the witness.

In response, the State stated on the record that it did not plan to call either Parker's counsel or his private investigator as witnesses. It noted that it planned to call only the witness to whom Parker sent the letters. The trial court denied the motion.

Nothing in this record shows that the State ever changed its position about calling defense counsel as a witness at trial. Thus, Parker's counsel was not likely to be a necessary witness and never was, in fact, a witness against his client. There was simply no actual conflict of interest.

Additionally, even if the State had wished to call Parker's counsel as a witness, it would have been unable to do so. To call him as a witness, the State would have needed to prove that his testimony was both necessary and otherwise unobtainable. Here, the State presented the testimony of the witness who had received the letters. Thus, Parker's counsel's testimony would not have been either necessary or otherwise unobtainable.

Parker argues that his counsel was either an "unwitting accomplice" and "critical witness," or an "actual accomplice" to the witness tampering. But both claims are incorrect. As explained previously, counsel was not a necessary witness. He was not a witness at all.

Additionally, nothing in the record indicates Parker's counsel was actually involved, or alleged to be actually involved, with the witness tampering. To the contrary, the State noted that it "ha[d] no concerns about [Parker's counsel] being involved in any of this." Parker fails to point to anything in this record to suggest otherwise.

## FIREARM ENHANCEMENTS

Parker also argues that the court erred when it added firearm enhancements to his sentences for human trafficking and promoting prostitution. Because there was a nexus between the firearm and the crimes, we disagree.

RCW 9.94A.533(3) imposes a sentencing enhancement if the defendant commits certain crimes while armed with a firearm. A person is "armed" if the weapon is readily accessible and easily available for use, and there is a nexus between the defendant, the crime, and the weapon.[11]

Whether the defendant was armed is "'a mixed question of law and fact.'"[12] Whether the evidence for a firearm enhancement is sufficient is a legal question reviewed de novo.[13]

For example, in State v. Easterlin, officers found the defendant with a gun on his lap and a controlled substance on his person.[14] In that case, there was a

---

[11] State v. Easterlin, 159 Wn.2d 203, 206, 149 P.3d 366 (2006).

[12] State v. Schelin, 147 Wn.2d 562, 565, 55 P.3d 632 (2002) (quoting State v. Mills, 80 Wn. App. 231, 234-35, 907 P.2d 316 (1995)).

[13] Id. at 566.

[14] 159 Wn.2d 203, 206, 149 P.3d 366 (2006).

8

sufficient nexus because a jury could find that he was armed to protect the controlled substance.[15]

In State v. Johnson, on the other hand, this court concluded that there was no sufficient nexus.[16] In that case, the defendant was in a bedroom when officers knocked on the door to his apartment.[17] When officers entered, they found him in the hallway.[18] The officers later discovered controlled substances in a bedroom and a gun in the compartment of a coffee table in the living room.[19] This court held that because Johnson could not obtain access to the gun, he was not armed at the time.[20]

*Human Trafficking*

Parker first argues that there was no nexus between the crime of human trafficking and the firearm. He is wrong.

Under RCW 9A.40.100, a person commits human trafficking by:

(ii) Benefit[ing] financially or by receiving anything of value from participation in a venture that has engaged in [recruiting or transporting a person, knowing that force will be used to cause the person to engage in a commercial sex act]; and

. . . .

---

[15] Id. at 210.

[16] 94 Wn. App. 882, 974 P.2d 855 (1999).

[17] Id. at 888.

[18] Id. at 887.

[19] Id. at 887-88.

[20] Id. at 894.

***[The venture] [i]nvolve[s] committing or attempting to commit kidnapping . . . .[21]***

Here, there was a nexus between the crime, the firearm, and the defendant. Parker was charged under this prong, subsection (ii), of the human trafficking statute, because the trafficking involved kidnapping J.H.

Parker used the firearm during this kidnapping. J.H. testified that Parker assaulted her and ordered her to leave the building she was in. J.H. complied, and Parker took her back to their residence. At their residence, Parker continued to assault her. During the assault, Parker pointed the gun at J.H.'s head and asked her if she wanted to die.

Thus, Parker used the gun during J.H.'s kidnapping. Because Parker's human trafficking charge was based on J.H.'s kidnapping, there is a sufficient nexus to the firearm enhancement.

*Promoting Prostitution*

Parker also argues that the promoting prostitution charge lacked a sufficient nexus to a firearm enhancement. He is wrong again.

Under RCW 9A.88.070,

(1) A person is guilty of promoting prostitution in the first degree if he or she knowingly advances prostitution:

*(a) By compelling a person by threat or force to engage in prostitution or profits from prostitution which results from such threat or force.[22]*

---

[21] (Emphasis added.)

[22] Id.

10

Here, the morning after Parker assaulted J.H. with the firearm, he woke her up and told her that she "needed to work and make some money and put some money in his pocket." J.H., who was "weak and exhausted and in pain," "didn't fight [Parker's suggestion]."

Accordingly, the use of the firearm was part of the force or threat of force Parker used to compel J.H. to engage in prostitution. Thus, there was a sufficient nexus to this charge.

Parker argues that there was no nexus because he used the firearm only "to commit the separate offense of second degree assault." But this argument ignores the fact that the second degree assault was part of the force or threat of force that established the promoting prostitution charge.

Parker also argues that his case is analogous to Johnson. But in Johnson, the defendant never had access to the gun and did not use it, unlike this case. The gun was merely found in his apartment.[23]

Here, the record shows that Parker used the gun to assault J.H. as part of the conduct that formed the basis for the promoting prostitution and human trafficking charges. Thus, Johnson is not analogous.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Parker raises multiple arguments in his statement of additional grounds for review. None warrants relief.

---

[23] Johnson, 94 Wn. App at 887-88.

*Sufficiency of Evidence*

Parker first argues that insufficient evidence supported several charges against him.[24] We conclude that sufficient evidence supported each charge.

Evidence is sufficient when any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.[25] When considering a sufficiency challenge, we defer to the jury's determination as to the weight and credibility of the evidence.[26] "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it."[27]

*Burglary*

Parker first argues that the State failed to prove one element of burglary—unlawfully entering or remaining in a building.[28] He argues that he received permission to enter the building, because an occupant opened the door to let him enter. This argument is unpersuasive.

Jennifer Prerost testified that she was in a house with J.H. when Parker came to the house and began banging on the door. While screaming outside, he threatened to kick in the door, telling Prerost to open the door for him. Parker

---

[24] Pro Se Supplement Brief Pursuant to RAP 10.10 Statement of Additional Grounds at 7-19.

[25] State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980).

[26] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

[27] State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

[28] Pro Se Supplement Brief Pursuant to RAP 10.10 Statement of Additional Grounds at 8-9.

also told Prerost that she "kn[e]w how he is" and warned her not to "play with him."

Prerost eventually opened the door. But from this testimony, the jury could have found that Prerost opened the door because of Parker's threats and that she did not willingly invite him into the house. This is supported by the fact that Prerost testified that she did not welcome Parker into the house and that he did not have her permission to be there. In short, this credibility determination by the jury is not reviewable by this court. Thus, sufficient evidence proves that Parker unlawfully entered or remained in the house.

*First Degree Kidnapping*

Parker also argues that insufficient evidence supports his conviction for first degree kidnapping. Specifically, he argues that he did not abduct J.H. because she willingly left the house with him. This argument is contrary to the record.

Prerost testified that J.H. "wanted to leave [Parker]." When Parker arrived at the house where Prerost was with J.H., J.H. begged her not to let him in. J.H. was "scared and panicked" and ran to hide in a bedroom. After Parker entered the house, he kicked down the bedroom door. Prerost could hear J.H. crying and Parker hitting her. She then saw Parker "pushing [J.H.] towards the door," push her into the back seat of his car, and "spe[e]d off."

With this testimony, the jury could have found that J.H. did not willingly leave with Parker. Rather, she did so because of the use of force or threatened

force.  Again, we do not review this credibility determination by the jury.  The evidence was sufficient to support the conviction of first degree kidnapping.

### Second Degree Assault

Parker next argues that insufficient evidence supports one count of second degree assault.[29]  That count of assault was based on the intent to commit a felony, namely unlawful imprisonment.

Parker argues that the State failed to prove this crime because the jury instruction for this charge stated that the assault occurred "on or about December 13, 2012 through January 20, 2013."  Parker argues that under this instruction, the State had to show that he imprisoned J.H. for the duration of the 37 days.  He is wrong again.

Here, the State identified a specific instance during that range where Parker assaulted J.H. and forced her to stay in her room.  The State was not required to prove that either the assault, or the false imprisonment it was intended to achieve, lasted for the duration of the "on or about" period.

### Unlawful Possession of a Firearm

Parker also argues that insufficient evidence supports his conviction for unlawful possession of a firearm.  Specifically, he argues that the State did not prove that he constructively possessed the firearm.[30]  The record shows otherwise.

---

[29] Pro Se Supplement Brief Pursuant to RAP 10.10 Statement of Additional Grounds at 11-12.

[30] Id. at 12-15.

A person constructively possesses something "that is not in his or her physical custody but is still within his or her 'dominion and control.'"[31] One factor courts consider is whether a person had dominion and control over the premises where the contraband was found.[32]

Here, the State presented sufficient evidence for the jury to find beyond a reasonable doubt that Parker constructively possessed the firearm. Police found the firearm in the house where Parker lived. Additionally, J.H. testified that Parker instructed her to move the firearm from under his bed to the garage, which she did.

Here, the fact that officers found the firearm in Parker's house, and that J.H. moved the firearm at Parker's request, show that he had dominion and control over the firearm. Thus, the State proved that he constructively possessed the firearm.

### Witness Tampering

Next, Parker argues that insufficient evidence supported one charge of witness tampering.[33] Specifically, he argues that he did not tell Prerost to change her testimony.

But the record provides evidence from which the jury could find that Parker asked Prerost to change her testimony. The State introduced a recorded

---

[31] State v. Davis, 182 Wn.2d 222, 227, 340 P.3d 820 (2014) (quoting State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969)).

[32] State v. Tadeo-Mares, 86 Wn. App. 813, 816, 939 P.2d 220 (1997).

[33] Pro Se Supplement Brief Pursuant to RAP 10.10 Statement of Additional Grounds at 15-17.

jail call from Parker to Prerost. In the call, Parker never directly asks Prerost to lie or change her testimony. But the jury could have inferred that Parker was attempting to instruct Prerost on how to testify.

Parker stated that he learned Prerost had said that she had witnessed his assault of J.H. Parker told Prerost that she needed to tell the truth and say that none of that had happened.

Later, when Prerost said that she had left the house and "wasn't even nowhere around" at the time of the assault, Parker replied "I don't know." When Prerost reiterated that she had left and wasn't there, Parker replied "Yeah. You just have—you was there. Nothing happened." He continued "You know I didn't do that. You was there with us."

At trial, Prerost testified that she witnessed Parker break down the door, assault J.H., and push her into his car. Thus, although Parker told Prerost to tell "the truth" and say that nothing happened, the jury could have inferred that Parker was instructing Prerost to lie.

Similarly, the fact that Prerost stated that she wasn't present, and Parker stated that she was, allowed the jury to find that Parker was instructing Prerost to say that she was present.

Thus, sufficient evidence supported this witness tampering charge.

*Promoting Prostitution and Human Trafficking*

Parker also argues that insufficient evidence supports his convictions of promoting prostitution and human trafficking. Specifically, Parker argues that the court should have suppressed evidence obtained from allegedly warrantless

searches of J.H.'s cell phones. Parker relies on evidence outside the record on appeal to make this argument. But he raises the same argument in his personal restraint petition. Accordingly, we do not consider this argument any further for purposes of the appeal and address it in the context of his personal restraint petition.

*Ineffective Assistance of Counsel*

Parker also argues that his counsel provided ineffective assistance by failing to move to suppress evidence found during allegedly warrantless searches of J.H.'s cell phones.[34] Because he fails to show that counsel's performance was deficient at the time of trial, we disagree.

The defendant bears the burden of proving ineffective assistance of counsel.[35] "[T]he defendant must show that (1) counsel's representation was deficient, that is, it fell below an objective standard of reasonableness and (2) there was prejudice, measured as a reasonable probability that the result of the proceeding would have been different."[36]

Judicial scrutiny of counsel's performance is "highly deferential."[37] We make every effort "to eliminate the distorting effects of hindsight, to reconstruct

---

[34] Id. at 26-29.

[35] State v. Humphries, 181 Wn.2d 708, 719, 336 P.3d 1121 (2014).

[36] Id. at 719-20.

[37] Strickland, 466 U.S. at 689.

17

the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[38]

Here, even assuming officers unlawfully searched J.H.'s cell phones, counsel was not ineffective for failing to move to suppress this evidence. Parker relies on the state supreme court's February 2014 decision in State v. Hinton to argue that he had standing to move to suppress evidence of his messages found in the search of another's cell phone.[39] But his trial was in November 2013, prior to the supreme court's decision.

At the time of his trial, Division Two of this court's June 26, 2012 decision in that case was still good law.[40] And that decision supported the conclusion that Parker lacked standing to challenge the search.[41] Thus, counsel's decision not to move to suppress this evidence was objectively reasonable.

Without a showing of this first prong of the test, there is no need to reach the second prong—the question of prejudice.

*Prosecutorial Misconduct*

Parker also argues that the prosecutor committed misconduct by knowingly eliciting false testimony.[42] But while Parker points out some

---

[38] Id.

[39] 179 Wn.2d 862, 319 P.3d 9 (2014).

[40] State v. Hinton, 169 Wn. App. 28, 280 P.3d 476 (2012), rev'd, 179 Wn.2d 862 (2014).

[41] Id. at 35.

[42] Pro Se Supplement Brief Pursuant to RAP 10.10 Statement of Additional Grounds for Review at 29-31.

inconsistencies in the State's witnesses' testimony, he fails to cite anything in the record indicating that the prosecutor knew this testimony was false. Thus, this argument is unpersuasive.

*Gang Evidence*

Finally, Parker argues that the trial court abused its discretion when it admitted evidence that he was in a gang.[43] He argues that the court failed to balance this evidence's probative value and prejudicial effect before admitting the evidence.

But the trial court balanced the probative value and prejudicial effect when it ruled in limine on this issue. There is no indication in the record that this ruling was tentative and subject to further argument during trial. Accordingly, the court was not required to revisit the matter when Parker renewed his objection at trial.

## PERSONAL RESTRAINT PETITION

In his consolidated personal restraint petition, Parker challenges the sufficiency of the charging document. He also claims his counsel was ineffective for several reasons. Finally, he claims the search and seizure of J.H.'s cell phones was illegal.

"When considering a timely personal restraint petition, courts may grant relief to a petitioner only if the petitioner is under an unlawful restraint, as defined by RAP 16.4(c)."[44] If the alleged error is constitutional, the petitioner must show

---

[43] Id. at 32-35.

[44] In re Pers. Restraint of Yates, 177 Wn.2d 1, 16, 296 P.3d 872 (2013); accord RAP 16.4(a).

actual prejudice.[45] If the alleged error is non-constitutional, the petitioner must show "'a fundamental defect resulting in a complete miscarriage of justice.'"[46]

The petitioner must make these showings by a preponderance of the evidence.[47]

When reviewing a personal restraint petition, appellate courts have three courses of action: "(1) dismiss the petition, (2) transfer the petition to a superior court for a full determination on the merits or a reference hearing, or (3) grant the petition."[48]

If the petitioner fails to make a prima facie showing of actual prejudice or a fundamental defect, the court should dismiss the petition.[49] On the other hand, if the petitioner meets his burden to show actual prejudice or a fundamental defect, the court should grant the petition.[50] The court should transfer the petition to the superior court if "the petitioner makes the required prima facie showing 'but the merits of the contentions cannot be determined solely on the record.'"[51]

---

[45] Id. at 17.

[46] Id. (quoting In re Pers. Restraint of Elmore, 162 Wn.2d 236, 251, 172 P.3d 335 (2007)).

[47] Id.

[48] Id.

[49] Id.

[50] Id. at 18.

[51] Id. (quoting Hews v. Evans, 99 Wn.2d 80, 88, 660 P.2d 263 (1983)).

To rely on allegations outside the existing record, "the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief."[52] If this evidence relies on others' knowledge, the petitioner can use affidavits or other corroborating evidence as to what those witnesses would testify.[53]

But "[t]his does not mean that every set of allegations which is not meritless on its face entitles a petitioner to a reference hearing. Bald assertions and conclusory allegations will not support the holding of a hearing."[54] Instead, the petitioner must state facts with "particularity."[55]

Here, with one exception, Parker fails to make a prima facie showing that he is entitled to relief.

### Charging Documents

Parker first argues that he is entitled to relief because his charging documents were constitutionally defective. We disagree.

Both the federal and state constitutions give defendants the right to be informed of the charges against them.[56] The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of

---

[52] Id.

[53] Id.

[54] In re Pers. Restraint of Rice, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

[55] Id.

[56] State v. McCarty, 140 Wn.2d 420, 425, 998 P.2d 296 (2000).

the nature and cause of the accusation."[57] Likewise, our state constitution provides that the accused has the right "to demand the nature and cause of the accusation against him."[58]

To be constitutional, charging documents must include "all essential elements of a crime, statutory and nonstatutory."[59] Essential elements are "'those facts that must be proved beyond a reasonable doubt to convict a defendant of the charged crime.'"[60]

When the defendant does not challenge the charging document until after the verdict, courts "more liberally construe[] [the document] in favor of validity."[61] "Under this rule of liberal construction, even if there is an apparently missing element, it may be able to be fairly implied from language within the charging document."[62]

To apply this rule, courts use a two-prong test: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging

---

[57] U.S. CONST. amend. VI.

[58] CONST. art. I, § 22.

[59] State v. Vangerpen, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995).

[60] State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (quoting State v. Powell, 167 Wn.2d 672, 683, 223 P.3d 493 (2009)).

[61] State v. Kjorsvik, 117 Wn.2d 93, 102, 812 P.2d 86 (1991).

[62] Id. at 104.

document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?"[63] Under the first prong, the essential question is "whether all the words used would reasonably apprise an accused of the elements of the crime charged."[64]

The second prong looks to whether the defendant "actually received notice of the charges he or she must have been prepared to defend against."[65] "It is possible that other circumstances of the charging process can reasonably inform the defendant in a timely manner of the nature of the charges."[66]

Errors in the charging document do not necessarily create reversible error. For example, an "[e]rror in a numerical statutory citation is not reversible error unless it prejudiced the accused."[67]

This court reviews de novo the adequacy of a charging document.[68]

Here, Parker first challenges the sufficiency of his charging documents after his conviction. Accordingly, we construe the charging documents more liberally.

Parker alleges that the charging documents were insufficient for two reasons, both relating to the dates listed on the documents. First, the third

---

[63] Id. at 105-06.

[64] Id. at 109.

[65] Id. at 106.

[66] Id.

[67] Vangerpen, 125 Wn.2d at 787-88.

[68] State v. Johnson, 180 Wn.2d 295, 300, 325 P.3d 135 (2014).

amended information incorrectly lists specific dates rather than date ranges. For example, while the original information alleged that Parker committed human trafficking "on or **between** November 1, 2012 and April 12, 2013," the amended information alleges that Parker committed this crime "on or **about** November 1, 2012 and April 12, 2013."[69] The third amended information uses "on or about" rather than "on or between" in 10 of the 11 charges.

Second, Parker argues that the dates listed for human trafficking and promoting prostitution are incorrect. The amended information alleges that these crimes occurred "on or about November 1, 2012 and April 12, 2013." But Parker points out that J.H. was in custody from November 6, 2012 to December 6, 2012.

In this case, the charging documents reasonably informed Parker of the charges against him. The State is not required to allege the exact date the crime occurred because that is not an element of the crime. RCW 10.37.050(5) requires that a charging document set forth sufficient facts to demonstrate that the statute of limitations has not expired. Unless time is an essential element, the State need not plead anything more specific.

Here, the dates in the charging documents indicated that the statute of limitations had not expired. The fact that they mistakenly indicated two specific dates, rather a range of dates, was not the omission of an essential element. Thus, the charging documents were not defective.

Moreover, Parker cannot show that the charging documents prejudiced his defense. Most of the jury instructions contained language stating that the crimes

---

[69] (Emphasis added.)

occurred "through" a pair of dates. One assault instruction stated that the crime occurred "on or about January 1, 2013 and February 2, 2013." When the jury asked if this date range was also supposed to be "through," both parties agreed that it was. Thus, Parker's counsel understood that the State charged his client with committing crimes over a range of days, as his response to the jury's question demonstrates.

Parker's argument that the promoting prostitution and human trafficking charges included the wrong date is unpersuasive. The State is not required to allege the exact date the crime occurred. Additionally, the State's theory of the case was that Parker began to recruit J.H. while she was in custody. Thus, it was not inappropriate for the charging document to include J.H.'s time in custody.

### Ineffective Assistance of Counsel

Parker also argues that he received ineffective assistance of counsel.

"[I]f a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice."[70]

Parker argues that his counsel was ineffective for three reasons. None survives scrutiny.

---

[70] In re Pers. Restraint of Crace, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

First, he argues that his counsel should have challenged the sufficiency of the charging documents. Because the charging documents were sufficient for the reasons we already explained in this decision, this claim is not persuasive.

Second, Parker argues that his counsel was ineffective for failing to move to suppress information obtained from J.H.'s cell phones. But as discussed earlier, it was not deficient performance for counsel to conclude under then existing law that Parker lacked standing to challenge the search of J.H.'s cell phones.

Finally, Parker argues that his counsel failed to properly investigate the case. Parker relies on conclusory allegations outside the record to support this claim.

Parker alleges that his counsel failed to investigate his case and states that if counsel had called certain witnesses, the jury would not have found him guilty.[71] Similarly, Parker provided affidavits and signed declarations from potential witnesses stating that they were not called to testify but had information helpful to Parker's case.[72]

But these statements do not specify with particularity to what these witnesses would have testified. For example, one affidavit merely says that the witness had "valuable information."[73] Another affidavit states that the witness's

---

[71] Personal Restraint Petition, Appendix 1-A.

[72] Id. at Appendix G.

[73] Id.

26

testimony "could have helped [Parker's] case."[74] Parker's affidavit also fails to provide any details as to the content of these witnesses' testimony.

Parker also fails to cite anything in the trial record that indicates to what these witnesses would have testified.

Thus, we conclude that Parker relies on conclusory statements, and thus is not entitled to relief or a factual hearing.

*Search and Seizure*

Finally, Parker argues that the State illegally searched and seized J.H.'s cell phones.[75] For the reasons that follow, we transfer this petition to the superior court for two things. First, the court shall appoint counsel to represent Parker for his request for relief in the personal restraint petition. Second, the court shall hold a reference hearing on Parker's claim that J.H.'s cell phones were illegally searched and seized, as State v. Hinton[76] impacts that analysis.

In Hinton, the court concluded that the defendant had a privacy interest in his text messages to another person, allowing him to challenge the warrantless search of that person's phone.[77]

On the present record and the present status of briefing, we are unable to determine whether Parker is entitled to relief. Accordingly, we transfer the

---

[74] Id.

[75] Personal Restraint Petition at 12-14; Pro Se Supplement Brief Pursuant to RAP 10.10 Statement of Additional Grounds at 17-26.

[76] 179 Wn.2d 862, 319 P.3d 9 (2014).

[77] Id. at 865.

petition to the superior court for appointment of counsel, a reference hearing, and findings of fact. The findings shall be transmitted to this court for further action.

The superior court's findings of fact should include, without limitation:

1. A specification of all evidence on J.H.'s cell phones to which Parker's asserted privacy interest extended;

2. Whether such evidence was admitted at trial; and

3. If not admitted, whether such evidence led to other evidence that was admitted at trial.

4. A specification of what evidence admitted at trial, independent of that listed in paragraphs 1 to 3, supported Parker's convictions.

We affirm Parker's judgment and sentence for the direct appeal. We dismiss his personal restraint petition to the extent of all claims except for the illegal search and seizure claim. With respect to that claim, we transfer the petition to the superior court for appointment of counsel and a reference hearing on that claim only. Thereafter, the court shall enter findings of fact and transmit them to this court for further action, all pursuant to RAP 16.12.

_Cox, J._

WE CONCUR:

_Trickey, J_                    _Dwyer, J._

28