IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39526-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JOSHUA JAMES GLAZIER, | ) | |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Richard Plumlee was shot and killed in December 2019. The State charged Joshua Glazier with second degree murder for Mr. Plumlee's death and second degree unlawful possession of a firearm.

Mr. Glazier was arraigned on May 4, 2020, but his trial did not begin until January 3, 2023. Mr. Glazier was eventually convicted of both counts. At sentencing, the court determined Mr. Glazier had an offender score of 2 and sentenced him to a total of 292 months of incarceration. The court found Mr. Glazier indigent, but assessed the crime victim penalty assessment (VPA).

Mr. Glazier appeals, arguing he was afforded ineffective assistance of counsel, the

offender score was incorrectly calculated, and the VPA should be struck from his

judgment and sentence. We conclude Mr. Glazier's trial counsel was not ineffective, but

remand for a full resentencing with an accurate offender score.

BACKGROUND

On December 17, 2019, Richard Plumlee was shot and killed at the Yakima Inn,

located in Yakima, Washington. Sheila Martin, a witness to the shooting, identified her

nephew, Mr. Glazier, as the shooter. Ms. Martin also reported her grandson, Ahmad

Nolan, was present when Mr. Plumlee was shot. Ex. SE-21A; Tr. of Ex. 21A at 5.

During an interview, Mr. Nolan provided law enforcement with information that

implicated Mr. Glazier in Mr. Plumlee's death. Four months later, Mr. Glazier was

charged with second degree murder and second degree unlawful possession of a firearm.

The State further alleged Mr. Glazier was armed with a firearm during the commission of

the murder.

Mr. Glazier was arraigned on May 4, 2020, and an initial trial date was set for July

13, 2020, without any objection from defense counsel. Thereafter, Mr. Glazier's trial was

continued seven times. When his case was ready for trial, the court postponed trial for

three weeks, over Mr. Glazier's objection, as Mr. Glazier's attorney had fallen ill with the

flu. Of the seven continuances, Mr. Glazier personally agreed to three, objected to three,

and both he and his trial counsel objected to one. The three continuances Mr. Glazier

2

individually objected to were requested by his trial counsel to allow him time for trial

preparation, including locating and interviewing the State's witnesses.  The sole

continuance objected to by both Mr. Glazier and his attorney was requested by the State

because the deputy prosecutor had three trials scheduled during the same period of time.

In a pretrial omnibus order, Mr. Glazier asserted his defense was a "General

Denial."  Clerk's Papers (CP) at 11.  Mr. Glazier did not submit a witness list.  Before

trial, and again over Mr. Glazier's objection, defense counsel and the State entered an

*Old Chief*[1] stipulation.  In the stipulation, it was agreed that Mr. Glazier had a previous

felony conviction, alleviating the State from having to prove that element for the second

degree unlawful possession of a firearm charge.

Trial commenced on January 3, 2023.  During his opening statement, Mr.

Glazier's attorney presented the jury with the possibility that they would be unable to find

beyond a reasonable doubt that Mr. Glazier was the person who shot Mr. Plumlee due to

Mr. Nolan's presence at the scene:

> Good afternoon, folks.  The first time Ms. Martin speaks to the
> police in the heat of the moment in what the police will describe as an
> excited utterance, she says I'm inside when I hear a shot.  She doesn't say I
> saw my nephew with a gun.  She doesn't say, I saw my nephew shoot

---

[1] 519 U.S. 172, 191, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) (The defendant voluntarily stipulated to an element of a charged crime rather than requiring the State to offer evidence supporting the element that is admissible but also potentially prejudicial to the defendant for jury consideration.)

3

anyone.  She doesn't even say, I saw my boyfriend and my nephew having some sort of beef over money.

The story changes over time because Ms. Martin talks to people.  It's like a game of telephone.

. . . .

What I'm discussing is what is my understanding of the evidence from reading the reports, from interviewing the witnesses.  If there wasn't going to be a difference of interpretation there wouldn't be a case.

*Mr. Nolan is the person who fired the shot.*  And maybe just as important to folks, are when you're trying to determine what happened you have to believe beyond a reasonable doubt that Mr. Glazier was armed and that Mr. Glazier fired that shot.  You will not have that evidence because you will not have a version of events that you can rely on because Ms. Martin changes her story.

. . . .

Ms. Martin gives four separate interviews. . . Each interview things change.  People are in different places.  People have different roles.

. . . .

In the end there will not be any question that Richard Plumlee was shot.  That on its face is a tragedy.  *You will not know beyond a reasonable doubt who did what.*

1 Rep. of Proc. (RP) (Jan. 5, 2023) at 438-42 (emphasis added).

The jury was taken from the courtroom for a recess after the State's first witness finished testifying.  During the recess, defense counsel informed the court that the windows on the courtroom doors were causing a distraction.  The court agreed to cover one of the two windows to accommodate defense counsel.  The State suggested placing a sign on the door that indicated the courtroom was open.

Throughout the trial, and outside the presence of the jury, defense counsel repeatedly claimed Mr. Nolan's presence at the scene created a reasonable doubt as to

4

whether it was Mr. Glazier who shot Mr. Plumlee. Defense counsel never asserted an

"other suspect" defense or a missing witness:

> Is the state really concerned that our argument is that someone else in the parking lot shot him and that that is the correct order of things? I mean, our argument is not going to be that because of how [Ms. Martin] described describes the order of things that Mr. Glazier isn't guilty. I haven't hidden the ball. You heard [Ms. Martin] testify. And we referenced Mr. Nolan. I'm not suggesting that that's what this is about. And I don't know how many times you got to say the thing they want before that's enough.
> [Ms. Martin]'s confused about all kinds of things. I'd probably have the argument that she didn't know really what happened. That they shouldn't—I'm telling you that I'm going to be saying to the jury you can't rely on her. You can't on her memory. You can't rely on any of this.

2 RP (Jan. 9, 2023) at 657.

> I don't know what [Mr. Nolan] is going to say. And I believe he has a right to have counsel because, Your Honor, I am arguing that it is at least as likely that [Mr. Nolan] is the shooter as it is my client.

2 RP (Jan. 10, 2023) at 707-08.

> Let me be clear. I'm not arguing a missing witness. I want to take—I'm not arguing a missing witness. I'm not going to argue that they didn't hear from [Mr. Nolan] because he did. If he takes the stand, I'm saying [Mr. Nolan] did it.
> *What I said in opening was it as likely as in questioning the main witness's credibility and bias.* If they don't call [Mr. Nolan], I'm not going to point out if they had him, they didn't call him. I don't think that that's fair. I agree. But that's never been my defense. That's not what I'm saying.

2 RP (Jan. 10, 2023) at 820-21 (emphasis added).

> And to be clear, I did not say in opening that [Mr. Nolan] did do it. I said as it is as likely on the evidence that [Mr. Nolan] did it as Mr. Glazier having done it.

2 RP (Jan. 11, 2023) at 842.

Mr. Nolan was named on the State's witness list. The State intended to call Mr. Nolan to testify about his previous statements to law enforcement that implicated Mr. Glazier as the shooter. However, neither party was able to interview Mr. Nolan as his whereabouts were unknown. During trial, Mr. Nolan was found to be incarcerated in the King County jail.

Mr. Nolan was transported to Yakima and assigned counsel. Mr. Nolan's attorney informed the court that Mr. Nolan was asserting his Fifth Amendment right to remain silent under the United States Constitution and would refuse to be interviewed by the State or defense counsel. Mr. Nolan's competency was also at issue based on an evaluation from King County. Mr. Nolan's attorney opined that because Mr. Nolan was refusing to speak, the court was effectively stymied from making any competency determination.

In the hopes of enticing Mr. Nolan to testify, the State presented his attorney with a verbal limited offer of immunity. Mr. Nolan's attorney rejected the offer, in part, because it was not in writing. The State eventually relieved Mr. Nolan of his subpoena.

During trial, the court asked defense counsel whether Mr. Glazier was maintaining his opposition to the stipulation of his criminal history. Defense counsel, citing *State v.*

6

*Humphries*,[2] incorrectly claimed he could stipulate to an element of a crime over his

client's objection as a trial tactic.  The court reviewed *Humphries*, read aloud the relevant

authority, and correctly interpreted the case as precluding the court from accepting a

stipulation over the defendant's objection.  However, after further consultation with his

attorney, Mr. Glazier stipulated to having a previous felony conviction for the purpose of

the State having to prove that element of unlawful possession of a firearm.

At the conclusion of the State's case, but prior to it resting, Mr. Glazier's counsel

moved for dismissal, arguing the State failed to prove each of the elements of the charged

crimes.  After the State rested its case-in-chief, defense counsel informed the court that

Mr. Glazier would not be calling any witnesses and rested.

Ultimately, the jury found Mr. Glazier guilty of second degree murder and second

degree unlawful possession of a firearm and additionally found he was armed with a

firearm during the commission of the murder.  At sentencing, the court found Mr. Glazier

had two juvenile felony convictions: a third degree assault from July 23, 2009, and

second degree unlawful possession of a firearm from February 16, 2011.  In calculating

Mr. Glazier's offender score, the court counted each juvenile conviction as one-half of a

point and counted each current conviction as one point against the other.  The court

concluded Mr. Glazier had an offender score of 2 on each count.  The court sentenced

---

[2] 181 Wn.2d 708, 336 P.3d 1121 (2014).

Mr. Glazier to 220 months on the second degree murder conviction, 60 months for the

firearm enhancement, and 12 months on the second degree unlawful possession of a

firearm conviction. The court ordered the sentences be served consecutively. The court

found Mr. Glazier indigent, yet ordered him to pay the VPA.

Mr. Glazier timely appeals.

ANALYSIS

On appeal, Mr. Glazier argues he was afforded ineffective assistance of counsel,

his offender score was miscalculated, and the VPA should be struck from his judgment

and sentence. We hold Mr. Glazier failed to establish his trial counsel's representation

was deficient, but remand for a full resentencing with an accurate offender score.

Because Mr. Glazier is granted a full resentencing, we refrain from addressing the VPA.

In a statement of additional grounds (SAG), Mr. Glazier alleges numerous errors.

Because Mr. Glazier's SAG was untimely, we decline review.

WHETHER MR. GLAZIER WAS AFFORDED INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Glazier claims four instances of ineffective assistance of counsel. He asserts

his attorney was deficient: (1) by failing to call Mr. Nolan as a witness, (2) through

conduct related to his right to a speedy trial, (3) in misleading the court on the law

concerning an *Old Chief* stipulation, and (4) in requesting the court place window

coverings over the courtroom doors. We address each contention in turn.

8

INEFFECTIVE ASSISTANCE OF COUNSEL

Criminal defendants have a constitutional right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Claims of ineffective assistance of counsel are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

A defendant bears the burden of showing that his counsel's performance "fell below an objective standard of reasonableness based on consideration of all the circumstances" and, if so, there is a reasonable probability that but for counsel's poor performance the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "If either element . . . is not satisfied, the inquiry ends." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiencies, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. "The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation." *Id*. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed.

2d 305 (1986). "When counsel's conduct can be characterized as legitimate trial strategy or tactic[ ], performance is not deficient." *Kyllo*, 166 Wn.2d at 863 (citing *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996)).

A defendant must also affirmatively prove prejudice, rather than simply show that "the errors had some conceivable effect on the outcome." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant demonstrates prejudice by demonstrating that the result of the proceedings would have been different but for counsel's deficient representation. *McFarland*, 127 Wn.2d at 337. Even if we were to find that the performance was deficient, the defendant still needs to prove prejudice. If a defendant fails to satisfy either prong, a court need not inquire further. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).

### *Failure to Call Mr. Nolan as a Witness*

Mr. Glazier contends that his attorney asserted an "other person" defense during his opening statement but failed to present any evidence that someone else shot Mr. Plumlee. Because the presumptive "other person," Mr. Nolan, was present when the Mr. Plumlee was shot, Mr. Glazier asserts his attorney was deficient in not calling Mr. Nolan as a witness. We disagree.

To demonstrate an "other person" defense, the defense must present some evidence that there is another person who committed the charged crime. *See State v. Downs*, 168 Wash. 664, 667, 13 P.2d 1 (1932). Citing *State v. Greiff*, Mr. Glazier asserts

trial counsel can be ineffective during an opening statement. 141 Wn.2d 910, 925-26, 10 P.3d 390 (2000). *Greiff* highlighted three out-of-state cases[3] in which the defense promised to provide "other person" evidence during its opening statements and then failed to do so. However, unlike *Greiff*, here, defense counsel never asserted an "other person" defense. Rather, during his opening statement, defense counsel suggested that, based on Mr. Nolan's presence at scene, "You will not know beyond a reasonable doubt who did what." 1 RP (Jan. 5, 2023) at 442. This statement was intended to inform the jury that the State would be unable to prove the murder charge beyond a reasonable doubt. The statement was also consistent with Mr. Glazier's stated defense of a "General Denial" and the lack of a witness list. CP at 11.

Moreover, defense counsel informed the court on at least four occasions that he was using Mr. Nolan's presence at the scene to cast doubt rather than designate him as the suspect. Defense counsel's actions also support the stated defense. At the conclusion of the State's case, defense counsel moved for dismissal, arguing the State had not proved all the elements of the charged crimes. Defense counsel's actions were consistent with his intended "General Denial" defense. CP at 11.

---

[3] The cases cited in *Greiff* are *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir. 1988) (promised to call doctors as witnesses but failed to do so); *People v. Lewis*, 240 Ill. App. 3d 463, 469, 609 N.E.2d 673 (Ill. App. Ct. 1992) (defense counsel promised to provide evidence that was inadmissible during opening statements); and *People v. Ortiz*, 224 Ill. App. 3d 1065, 1073, 586 N.E.2d 1384, 167 Ill. Dec. 112 (1992) (defense counsel promised to provide evidence of another suspect but failed to produce it during the trial).

11

Mr. Glazier's trial counsel made a valid strategic decision to present a general denial defense rather than an "other person" defense. The right to counsel does not include the right to have trial counsel raise every issue advanced by the defendant. *State v. Elwell*, 199 Wn.2d 256, 272, 505 P.3d 101 (2022). Mr. Glazier's trial counsel was not ineffective in failing to call Mr. Nolan as a witness.

Even if we were to conclude Mr. Glazier's trial counsel's performance was deficient, Mr. Glazier is unable to prove that the deficiency had some conceivable effect on the outcome of the trial. Because Mr. Nolan asserted protection under the Fifth Amendment, he was unavailable to testify. Had Mr. Glazier's attorney called him as a witness, the jury still would not have heard from him. Further, given the questions surrounding Mr. Nolan's competency, even assuming the State's verbal limited immunity offer was enforceable, it is unlikely Mr. Nolan could have made an intelligent decision on the offer. Consequently, Mr. Glazier is unable to demonstrate that he was prejudiced by his trial counsel's alleged deficiency in not calling Mr. Nolan as a witness.

### Time for Trial – Failure to Object

Mr. Glazier argues his attorney was ineffective in failing to object to the initial trial setting. We disagree.

CrR 3.3(d)(3), Washington's time for trial rule, provides:

> A party who objects to the date set upon the ground that it is not within the time limits prescribed by this rule must, within 10 days after the notice is mailed or otherwise given, move that the court set a trial within those

time limits. Such motion shall be promptly noted for hearing by the moving party in accordance with local procedures. *A party who fails, for any reason, to make such a motion shall lose the right to object that a trial commenced on such a date is not within the time limits prescribed by this rule.*

(Emphasis added). In *State v. Walker,* the Supreme Court reinforced the plain language of the rule:

[O]nce the time-for-trial period has expired, a party cannot object to the untimely trial date under CrR 3.3(d)(3) because it is no longer reasonably possible to comply with the rule's requirement to "object" in the prescribed manner, i.e., by moving to set the trial date within the time-for-trial period. This conclusion is further supported by the language of the final sentence of CrR 3.3(d)(3), which contemplates that any remedy under the rule will be lost if the party cannot comply "for any reason."

199 Wn.2d 796, 802, 513 P.3d 111 (2022). In reaching this holding, the Supreme Court recognized the only remedy CrR 3.3(d)(3) offers is an adjustment of the trial setting within the parameters of CrR 3.3(b)(1)(i) as dismissal is not available to an aggrieved defendant. *Id*. at 806.

Mr. Glazier was arraigned on May 4, 2020. The trial court set trial for July 13, 2020, outside the time limitations of CrR 3.3(b)(1)(i). Mr. Glazier's counsel failed to move for a trial date within 60 days of the arraignment within 10 days of receiving notice of the trial date. Although defense counsel's performance may have fallen below an objective standard of reasonableness by not moving for a trial date within the limitations of CrR 3.3(b)(l)(i), Mr. Glazier is unable to demonstrate that the result of the proceedings would have been different but for counsel's deficient representation. Rather, had defense

13

counsel brought the appropriate motion, the remedy would have been a timely trial setting.

Because Mr. Glazier cannot establish prejudice, he was not afforded ineffective assistance of counsel when his trial counsel failed to object to the untimely trial setting.

*Time for Trial – Constitutional Right*

Mr. Glazier next contends his attorney was ineffective in failing to safeguard his constitutional right to a speedy trial. We disagree.

We review both constitutional speedy trial challenges and rules-based time-for-trial challenges de novo. *State v. Rafay*, 168 Wn. App. 734, 769, 285 P.3d 83 (2012).

Where a defendant alleges a violation of their right to a speedy trial as guaranteed by the Sixth Amendment, we apply the framework provided in *Barker v. Wingo*.[4] *State v. Iniguez*, 167 Wn.2d 273, 283, 217 P.3d 768 (2009). Under *Barker*, a defendant who alleges a speedy trial violation must first show the delay "crossed a line from ordinary to presumptively prejudicial." *Iniguez*, 167 Wn.2d at 283. If this initial threshold is met, we then analyze the remaining *Barker* factors: (1) the length of the delay, (2) the reasons for the delay, (3) whether the defendant asserted their right to a speedy trial, and (4) whether prejudice resulted. *Id.* However, these factors are neither exclusive nor, independently, necessary. *Id.*

---

[4] 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

14

Mr. Glazier was arraigned on May 4, 2020, and his trial commenced on January 3, 2023. This approximate 32-month period, as the State concedes, is "'presumptively prejudicial.'" *See Doggett v. United States*, 505 U.S. 647, 652, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992) (quoting *Barker*, 167 Wn.2d at 652). We therefore analyze the *Barker* factors.

The first *Barker* factor is the length of the delay. Following Mr. Glazier's arraignment, the trial court granted seven motions to continue trial and once postponed the trial due to defense counsel's illness. Of the seven continuances, defense counsel either requested or mutually agreed to six. Defense counsel objected to the State's lone motion for a continuance. Albeit Mr. Glazier personally objected to three of the continuances sought by his attorney, when defense counsel requests a delay, even over the objection of the defendant, the delay is chargeable to the defendant. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 920, 952 P.2d 116 (1998).

Defense counsel's requested continuances were due to his need to prepare for trial, including locating and interviewing witnesses. Defense counsel's ability to prepare for trial is "an extremely important aspect" to consider in deciding whether the length of the delay was reasonable. *State v. Ollivier*, 178 Wn.2d 813, 831, 312 P.3d 1 (2013). Because this was a homicide trial, the delay was not highly disproportionate to the complexity of the issues and trial counsel's need to prepare. The length of delay factor weighs against Mr. Glazier.

15

The second *Barker* factor is the reasons for the delay. When, like here, the delay is based on defense counsel's need to prepare for trial, the first and second *Barker* factors are closely related. *Ollivier*, 178 Wn.2d at 831.

As previously discussed, delays caused by defense counsel are attributable to the defendant. *Id*. at 832. Most of the continuances were based on defense counsel's need to prepare for trial. Delay was also attributed to the State being unable to locate some of the witnesses to be interviewed. Indeed, Mr. Nolan was not located until after trial had begun.

Because defense counsel's requested delays are attributable to Mr. Glazier and the delays were largely based on his attorney's need to prepare for trial, locate witnesses, and interview witnesses, the reason for the delay factor weighs against Mr. Glazier.

The third *Barker* factor is whether the defendant asserted his right to a speedy trial. Mr. Glazier objected to three of the motions to continue that were brought by his trial counsel. Both Mr. Glazier and his trial counsel objected to the State's motion for a one-month continuance due to the deputy prosecutor's unavailability. Mr. Glazier also objected to the resetting of the trial date, within speedy trial, due to his attorney's illness.

Mr. Glazier asserted his right to a speedy trial on at least four occasions. The assertion of the right to a speedy trial factor weighs mildly in favor of Mr. Glazier.

The final *Barker* factor is whether any prejudice resulted from the delay. We assess prejudice by examining the interests that the right to a speedy trial protects, which

16

includes the prevention of harsh pretrial incarceration, the minimization of the defendant's anxiety and worry, and limiting the impairment to the defense. *Iniguez*, 167 Wn.2d at 295. Of these, impairment to the defense is the most serious to consider but demonstration of this factor is not required to show a constitutional speedy trial violation. *Id.*

At a pretrial hearing, Mr. Glazier expressed he was experiencing anxiety and depression, and had been subject to harsh treatment while awaiting trial. Nevertheless, his defense was not impaired by the delays. To the contrary, the delays likely benefited Mr. Glazier as Ms. Martin, a key witness for the State, had suffered a stroke and was having memory issues. During trial, defense counsel was able to point out deficiencies in Ms. Martin's memory or inconsistencies in her testimony. Furthermore, the State's case did not seemingly benefit from the delays as its case mainly relied on the veracity of the witness' testimony. Witness memories fade and become less reliable over time.[5] Therefore, the prejudice factor weighs against Mr. Glazier.

In sum, the *Barker* factors weigh against Mr. Glazier. The delay was not unreasonably lengthy, especially in light of the nature of the charges; nearly all the delays were either agreed to by Mr. Glazier or credited to his attorney's need to prepare for trial, locate witnesses, and interview witnesses; and Mr. Glazier asserted his right to a speedy

---

[5] *E.g.*, *State v. Lawson*, 352 Or. 724, 746, 291 P.3d 673 (2012) ("Memory generally decays over time.").

17

trial by objecting to only three of the continuances and the final three-week rescheduling of his trial date. Compellingly, Mr. Glazier is unable to show he was specifically prejudiced by the delay.

Because Mr. Glazier's constitutional right to a speedy trial was not infringed upon, he was not afforded ineffective assistance of counsel due to his trial attorney failing to safeguard the right, nor was Mr. Glazier prejudiced by the delay.

Lastly, Mr. Glazier asserts several of the continuances were improper. He first claims the continuance granted on July 10, 2020, did not meet the requirements of CrR 3.3(f)(1) because there was no written agreement. CrR 3.3(f) provides, in pertinent part:

> **Continuances.** Continuances or other delays may be granted as follows:
> (1) *Written Agreement*. Upon written agreement of the parties, which must be signed by defense counsel or the defendant or all defendants, the court may continue the trial date to a specified date. In the absence of the defendant's signature or presence at the hearing, defense counsel's signature constitutes a representation that the defendant has been consulted and agrees to the continuance. The court's notice to defense counsel of new hearing dates constitutes notice to the defendant.

A continuance order signed by the parties constitutes a writing in satisfaction of CrR 3.3(f)(1). Here, the continuance at issue was in writing and signed by Mr. Glazier's attorney who stated Mr. Glazier authorized the continuance. The continuance complied with CrR 3.3(f)(1).

Mr. Glazier also presents vague challenges to the continuances granted on February 5, 2021, November 5, 2021, January 21, 2022, July 15, 2022, and the court's

18

order of December 8, 2022, that postponed trial for three weeks. His limited arguments are generally based on conjecture about his trial counsel's conduct or are otherwise indiscernible. An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). We need not consider arguments that a party has not properly developed in their briefs and for which the party has cited no authority. *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990) (citing *Smith v. King*, 106 Wn.2d 443, 722, P.2d 796 (1986)). Consequently, we decline to review Mr. Glazier's remaining challenges to the continuances.

<u>Old Chief</u> *Stipulation*

Mr. Glazier contends his defense counsel was ineffective when he misled the court on the law related to defense counsel's authority to stipulate to an element of a crime over the defendant's objection. We disagree.

Inaccurately citing the holding in *State v. Humphries*, defense counsel asserted, over Mr. Glazier's objection, that he could stipulate to Mr. Glazier having a previous felony conviction, alleviating the State from having to prove that element of second degree unlawful possession of a firearm. 181 Wn.2d at 708. Problematic to this claim is the trial court correctly interpreted and followed the holding in *Humphries*. Moreover, Mr. Glazier later stipulated to the previous felony conviction, alleviating the State from having to prove that element of unlawful possession of a firearm. Assuming defense

19

counsel was deficient due to him inadvertently misleading the court on the holding

in *Humphries*, because the trial court correctly interpreted and applied the law, and

Mr. Glazier later stipulated to his previous felony conviction, there exists no reasonable

probability that the outcome of the proceedings would have been different but for trial

counsel's alleged deficient performance.

Mr. Glazier was not afforded ineffective assistance of counsel when his attorney

inadvertently misstated the law to the trial court.

*Courtroom Closure*

Mr. Glazier contends his attorney effectively requested closure of the courtroom,

in violation of *State v. Bone-Club*,[6] when he requested window coverings on the doors to

the courtroom. We disagree.

The Sixth Amendment and article I, section 22 of the Washington State

Constitution guarantees the criminally accused the right to a public trial. A courtroom

closure occurs "when the courtroom is completely and purposefully closed to spectators

so that no one may enter and no one may leave." *State v. Lormor*, 172 Wn.2d 85, 93, 257

P.3d 624 (2011). To prevail on a courtroom closure claim, the proponent bears the

burden of showing a closure had occurred. *State v. Love*, 183 Wn.2d 598, 605, 354 P.3d

841 (2015).

---

[6] 128 Wn.2d 254, 906 P.2d 325 (1995)

Here, the trial court, at defense counsel's request, placed a cover over one of the two windows on the courtroom doors. However, Mr. Glazier has failed to show that anyone was deprived access to the courtroom because of the window covering. Moreover, because Mr. Glazier brings this claim under the guise of ineffective assistance of counsel, he would have to show his attorney's performance fell below an objective standard of reasonableness and, if so, there was a reasonable probability that but for counsel's poor performance the outcome of the proceedings would have been different. He fails to present argument on either factor.

Mr. Glazier was not afforded ineffective assistance of counsel when his attorney requested window coverings nor was Mr. Glazier deprived of a public trial.

OFFENDER SCORE

Mr. Glazier contends his offender score was miscalculated when the trial court included two juvenile convictions that had washed out. The State concedes the alleged error, but requests it be allowed to present additional evidence concerning the convictions at resentencing. We accept the State's concession and grant its request to present additional evidence at resentencing.

We review the trial court's calculation of an offender score de novo. *State v. Mutch*, 171 Wn.2d 646, 653, 254 P.3d 803 (2011). Challenges to illegal or erroneous sentences may be raised for the first time on appeal. *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999).

An offender score is used to establish the standard sentencing range for a felony offense. *See* RCW 9.94A.525, .530(1). To calculate an offender score, the court relies on the seriousness level of the current offense together with the defendant's criminal history, including juvenile adjudications and other current offenses. RCW 9.94A.030(11), .589(1). Juvenile nonviolent felony convictions count as one-half a point towards a defendant's offender score. Former RCW 9.94A.525(7), (9) (2019). However, prior class C convictions do not count toward an offender score if the defendant spent five consecutive years from the time of the defendant's release from confinement in the community without committing any crime that resulted in a conviction. Former RCW 9.94A.525(2)(c).

Here, the court concluded Mr. Glazier had an offender score of 2 for each count. The trial court calculated this score by counting each current offense against the other and adding 1 point for the two juvenile convictions. Both of Mr. Glazier juvenile convictions were class C felonies.[7] The maximum sentence for a class C felony is imprisonment for a term of not more than five years. RCW 9A.20.020(1)(c). Mr. Glazier was sentenced on his most recent juvenile felony on February 16, 2011. Assuming he received the maximum term of five years, he would have been released in 2016. In this matter, the

---

[7] Third degree assault sentenced on July 23, 2009, and unlawful possession of a firearm in the second degree sentenced on February 16, 2011.

22

crime was committed in December 2019, and Mr. Glazier was sentenced in February 2023. It is possible Mr. Glazier may have been crime-free for more than five consecutive years between the time of his release on the most recent juvenile conviction and the date of the crimes at issue here.

Thus, we remand for a full resentencing. On remand, the State may present additional evidence regarding Mr. Glazier's criminal history. *See* RCW 9.94A.530(2).

VICTIM PENALTY ASSESSMENT

Mr. Glazier contends that the VPA must be struck from his judgment and sentence due to recent changes in the law. Although the State concedes, we decline review because Mr. Glazier has been afforded a full resentencing. Mr. Glazier may raise this issue before the sentencing court.

STATEMENT OF ADDITIONAL GROUNDS

RAP 10.10(a) allows an appellant to "file a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review." RAP 10.10(d) requires an appellant's attorney to promptly "advise the defendant of the substance of [RAP 10.10]" when they provide the defendant a copy of the brief being filed by counsel. The purpose of a SAG is to "identify and discuss those matters related to the decision under review *that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel*." RAP 10.10(a) (emphasis added).

23

Mr. Glazier first attempted to raise numerous issues through a purported SAG. The purported SAG appears to be correspondence between Mr. Glazier and his appellate counsel. The document contains a handwritten date of "2023/06/11." We are unsure whether "2023/06/11" refers to June 11, 2023, or November 6, 2023. Based on Mr. Glazier handwriting the date in month/day order on his second SAG, we surmise the document was likely dated June 11, 2023. The document was filed on November 17, 2023, but was rejected because it was unsigned. The same document was refiled on December 6, 2023, with the inclusion of Mr. Glazier's signature.

Mr. Glazier's appellate counsel filed an opening brief on November 7, 2023. Because Mr. Glazier's purported SAG predates the filing of his opening brief by approximately five months, coupled with the document appearing to be a communication between Mr. Glazier and his attorney, the document was likely prepared without Mr. Glazier first reviewing the opening brief as required by RAP 10.10(a).

Mr. Glazier's attorney filed an amended opening brief on February 23, 2024. Mr. Glazier filed a second SAG on April 29, 2024. Although Mr. Glazier's second SAG was filed on the proper "Statement of Additional Grounds for Review" form, it was rejected as untimely. In rejecting the SAG, the court clerk informed Mr. Glazier that his counsel would have to file a motion before an untimely SAG would be accepted for filing. (*See* May 10, 2024 letter to Mr. Joshua Glazier). No such motion was made.

Because Mr. Glazier's first purported SAG is a communication with his attorney and was drafted before Mr. Glazier had an opportunity to review the brief filed by his attorney to determine what issues had not been adequately addressed, we decline review of his first SAG. Further, because Mr. Glazier's second SAG was rejected as untimely, and no motion was filed for us to accept it, we decline review of his second SAG. Mr. Glazier's remedy is through a personal restraint petition.

CONCLUSION

Mr. Glazier was not afforded ineffective assistance of counsel. However, we remand for a full resentencing with an accurate offender score. Because Mr. Glazier is granted a full resentencing, we decline to review the VPA.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Cooney, J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, C.J.

25